MARY A. UNDERWOOD et al., Appellants, *v.* HARRIET S. CURTIS et al., Individually and as Executors, Respondents.

Where executors are clothed with the power and it is made their imperative duty to sell a testator's real estate and distribute the proceeds in a manner provided by the will, the real estate will be deemed converted into personalty.

Where the time of sale is not necessarily postponed to a specified future time, or until the happening of a designated event, the conversion takes place at the testator's death, the distributees taking their interests as money, not land.

Where a trust is created by which the possession of personal property and the legal estate therein is vested in trustees during the continuance of the trust, the absolute ownership of such property is suspended, and to validate the trust, the duration of such suspension must be limited to two lives in being; not to a term of years however short.

Where several trusts are created and among them one or more which render the disposition illegal and these can be separated, without doing injustice or defeating the will of the testator, that which is illegal, or which added to the others, renders the whole illegal, may be cut off and the others may stand, thus giving the intention of the testator effect as far as possible.

The will of C., as modified by a codicil thereto, after certain specified bequests, directed that his executrices should take possession of the residuary estate, real and personal, and convert the real estate into money at such time as they might deem proper, during a period not exceeding ten years after the death of the testator's widow; that during the life-time of the widow and until the real estate should be sold, the executrices, two daughters of the testator, should collect the income of the estate and apply the same to the use of the widow and to their own use or the survivor of them, and after her death, if the real estate was not then sold, to their own use or the survivor of them until such sale; that immediately thereafter the estate should be divided into four equal shares, one of which each of the executrices should receive personally,

the remaining two shares to be retained by them in trust, the income of one share to be be paid to U. during her life, at her death the principal to go to her heirs, the income of the other share to be paid to B. during her life, at her death the principal to go to her heirs. In an action brought by U. and B., who were also daughters of the testator, to procure the partition of the real estate of which C. died seized, or if partition could not be had, to obtain a construction of the will and codicil. *Held*, that the real estate was on the death of the testator converted into personalty, the legal title to which was vested in the executrices in trust; that during the continuance of the trust the absolute ownership was suspended; that as the trust attempted to be created for the benefit of the testator's daughters was not limited by lives in being, but upon the life of the widow and an indefinite period thereafter, which might be of ten years' duration, it was violative of the Statute of Perpetuities, and so, void.

But *held*, that as the trust created for the life of the widow was separable from the others, their invalidity did not affect it, and the trust for her benefit should be permitted to stand ; and except as to the estate created for her life, that the testator died intestate.

Also *held*, that as the real estate was converted into personalty and was vested in the trustees during the life of the widow, and until her death a division of the property could not be claimed, the action of partition could not be maintained.

Also *held*, that considering the property as personalty, as complete relief could in due time be had in Surrogate's Court, the court was authorized on that ground in the exercise of its discretion to refuse to entertain the action as one for the construction of the will; and so, that a demurrer to the complaint was properly sustained.

*Savage* v. *Burnham* (17 N. Y. 561); *Moncrief* v. *Ross* (50 id. 431); *Robert* v. *Corning* (89 id. 225); *Manice* v. *Manice* (43 id. 303), distinguished.

(Argued June 18, 1891; decided October 6, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered on an order made June 24, 1889, which reversed an interlocutory judgment overruling the demurrer interposed by the defendants and decreeing partition or sale of the premises described in the complaint, and which dismissed the complaint.

This action was brought to partition certain lands of which Palmer H. Curtis died seized.

Said Curtis left him surviving a widow and four daughters, two of whom are the plaintiffs in this suit. He left a last will

and testament and a codicil thereto, that have been duly admitted to probate, by which he undertook to make a testamentary disposition of the lands in controversy in such manner as to prevent the plaintiffs from receiving any portion of the principal of his estate. The plaintiffs claim that the will and codicil by which the testator sought to accomplish such purpose are inoperative, because in contravention either of the statute against perpetuities, or the statute relating to accumulations of personal property and expectant estates in such property, as the alienation or absolute ownership of his property is thereby suspended for a longer period than during the continuance of not more than two lives in being at the creation of the estate.

The will was executed September 13, 1879, and its provisions, so far as material, are as follows:

"After all my lawful debts are paid and discharged, I give and bequeath to my four daughters, Helen C. Waters, Harriet S. Curtis, Mary A. Underwood and Theresa L. Brown, all my household furniture, family pictures and books, etc., to be equally divided between them by my executrices herein named; but said household furniture, family pictures, books, etc., shall not be so divided during the life-time of my wife, Fanny Curtis, and my said wife and my said daughters, Helen C. Waters and Harriet S. Curtis shall have the use, benefit and control of the said household furniture, family pictures, books, etc., until the death of my said wife, free from charge.

"I give and bequeath unto two of my daughters, viz.: Helen C. Waters and Harriet S. Curtis, two horses, two sets of harnesses, two carriages and two sleighs.

"I give and bequeath unto my wife, Fanny Curtis, and unto my daughters, to wit: Helen C. Waters and Harriet S. Curtis, the use, proceeds, income and benefit of all the rest, residue and remainder of my estate, both real and personal, to share and share alike therein during the life-time of my said wife, Fanny Curtis, and the provisions herein made for my said wife shall be in lieu of dower, providing she shall accept

the same. And, upon my death, my said executrices are hereby authorized and empowered to enter upon, into and take possession of all my estate, both real and personal, and hold, use and keep the same or rent the same for the sole use and benefit of my two daughters, the said Helen C. Waters and the said Harriet S. Curtis, until the death of my said wife.

" My said executrices are hereby fully authorized and empowered during the life-time of my said wife, or at any time thereafter, to sell, grant, bargain and convey by contract or good and sufficient deed or deeds, all or any of the real estate, lands or hereditaments of which I shall die seized, for such price or prices and upon such terms and conditions as to my said executrices shall seem meet, the proceeds of such sale or sales to be held by them for the use and benefit of my said wife and the said Helen C. and Harriet S., during the life-time of my said wife, as hereinbefore expressed; said executrices are hereby authorized and empowered to rent any or all of said real estate during the life of my said wife.

" Upon the death of my wife, the said Fanny Curtis, or at such times thereafter as my said executrices shall deem meet, and within ten years after the death of my said wife, I direct that my said estate, real and personal, be divided by my said executrices into four equal shares or portions; that one of said shares or portions shall be given to and be the absolute property of my daughter, Helen C. Waters; that one of the said shares or portions shall be given to and be the absolute property of my daughter, Harriet S. Curtis; the remaining two shares or portions of my estate I give and bequeath to my said executrices, in trust, for them to hold and invest in good, permanent, well paying securities, and the use, income and proceeds of one of said shares or portions are by them to be paid to and for the use and benefit of my daughter, Mary A. Underwood, during the life-time of my said daughter, Mary A. Underwood, and upon the death of my said daughter, Mary A., the share or portion last aforesaid shall belong absolutely to her heirs at law. In case of sickness or any other misfortune during the life-time of said Mary A., my said executrices are hereby

authorized to pay over to said Mary A. for her use and benefit (should Mary A. need the same), out of the principal of the said share or portion hereinbefore set apart for the use and benefit of said Mary A., such sum or sums of said share or portion as to my said executrices shall seem meet, but such payments shall not, in the aggregate, exclusive of the use and benefit or income of said share or portion hereinbefore directed to be paid to said Mary A., exceed the sum of two hundred dollars in any one year.    The use, income or proceeds of the remaining share or portion of my estate is, by said executrices, to be paid to and for the benefit and use of my daughter, Theresa L. Brown, during the life-time of my said daughter, Theresa L., and upon her death the share or portion last aforesaid shall belong absolutely to her heirs at law.    In case of sickness or any misfortune during the life-time of said Theresa L., my said executrices are hereby authorized to pay over to said Theresa L. for her use and benefit (should said Theresa L. need the same), out of the principal of the said share or portion hereinbefore set apart for her use and benefit, such sum or sums of said share or portion as to my said executrices shall seem meet, but such payment shall not in the aggregate, exclusive of the use and benefit of said share or portion hereinbefore directed to be paid to said Theresa L., exceed the sum of two hundred dollars in any one year.    And my said executrices are hereby authorized and empowered to sell, convey, to convert into money any or all of my estate, real and personal, for the purpose of making the division above named, and for that purpose they are given the said ten years in which to make the said division, so that my estate may not be sacrificed, but it is my will that my daughters, Mary A. and Theresa L., shall have the income from the share or portion of my estate named for them, and for their use and benefit, from the death of my said wife, to be paid to them from that date at least once yearly.    Likewise I make, constitute and appoint my daughters, Helen C. Waters and Harriet S. Curtis, to be the executrices of this, my last will and testament, hereby revoking all former wills by me made, and having full confidence in my said execu-

trices, they nor either of them shall be required to give any bond or security for the execution of said will or the trust herein created."

Subsequently, and on the 7th day of June, 1882, Curtis duly executed a codicil to his will, which reads as follows : "Whereas, I, Palmer H. Curtis, of the city of Syracuse, Onondaga county and state of New York, did, on the 13th day of September, 1879, make, subscribe and publish my last will and testament in words and figures as therein expressed ; now, therefore, I, said Palmer H. Curtis, do make this codicil to my said last will and testament as follows : I give and bequeath to my four daughters, Helen C. Waters, Harriet S. Curtis, Mary A. Underwood and Theresa L. Brown, all my household furniture, goods, family pictures and books, to be equally divided between them by my executrices in said will appointed as in said will directed.

" Said household goods, furniture, family pictures and books shall not be divided during the life-time of my wife, Fanny Curtis, nor until my executrices shall sell and convey all the real estate of which I shall die seized, and my said wife, Fanny Curtis, and my said daughters, Helen C. Waters and Harriet S. Curtis, or any one or either of the three who shall survive the other, shall have the use, benefit and control of said household goods, furniture, family pictures and books, absolutely free from all charges, until the death of my said wife, and until the further time when the real estate of which I shall die seized shall be sold and conveyed by my said executrices, not to exceed the ten years named in said will.

" That my two married daughters, to wit, Mary A. Underwood and Theresa L. Brown, shall not have the interest, benefit or income from the share or portion of my estate named for them and for their benefit in said will, until the death of my said wife, Fanny Curtis, but said interest, benefit or income shall belong absolutely to my said wife and two other daughters, to wit, Helen C. Waters and Harriet S. Curtis, until the death of my said wife, share and share alike.

" If, upon the death of my said wife, Fanny Curtis, all the

real estate of which I shall die seized shall not then have been sold and conveyed as in said will provided, then and in that event said two married daughters, to wit, Mary A. Underwood and Theresa L. Brown, shall not have the interest, benefit or income from the share or portion of my estate named for them and for their benefit in said will, until said executrices shall sell and convey all the real estate of which I shall die seized, but the said interest, benefit and income named in said will for said Mary A. Underwood and Theresa L. Brown, shall belong, absolutely, to my two other daughters, to wit, Helen C. Waters and Harriet S. Curtis, or to the one who shall survive the other, until such time as the real estate of which I shall die seized shall be sold, and not to exceed the ten years named in said will.

"This codicil is made to enable my wife and two unmarried daughters to live upon and occupy the said real estate until such time as it shall be sold as in said will provided."

*Charles E. Ide* for appellants.   The will and codicil are one instrument; together they are the last will of the testator, as of the date of the codicil; and they stand and fall together. (Redf. on Surr. 219, 220; *Ward* v. *Ward*, 105 N. Y. 68, 73; 3 R. S. [7th ed.] 2288, § 71; *Brown* v. *Clark*, 77 N. Y. 369.) The alleged will, and the will and codicil, and the codicil, and each and all of them are illegal, null and void, for the reason that the absolute power of alienation or ownership of the property is thereby suspended for a longer period than during the continuance of not more than two lives in being at the creation of the estate. (*Patterson* v. *Ellis*, 11 Wend. 259–279; *Brown* v. *Evans*, 34 Barb. 594–605; *Hawley* v. *James*, 16 Wend. 60, 62, 120, 121, 174, 175; 105 N. Y. 68, 74; *Knox* v. *Jones*, 47 id. 389, 396; *Dana* v. *Murray*, 122 id. 604, 617; *Everith* v. *Everith*, 29 id. 39, 71; *Power* v. *Cassidy*, 79 id. 602, 613; *Prentice* v. *Janssen*, Id. 478, 485; *Robert* v. *Corning*, 86 id. 225, 239; *Van Vechten* v. *Van Vechten*, 8 Paige, 124; *Haynes* v. *Sherman*, 117 N. Y. 433, 438; 3 R. S. [7th ed.] 2182, § 58; *Morse* v. *Morse*, 85 N. Y. 53, 60; *Gilman*

v. *Reddington*, 24 id. 9, 12, 13 ; *Day* v. *Roth*, 18 id. 453 ; *Martin* v. *Funk*, 75 id. 141 ; *Tobias* v. *Ketchum*, 32 id. 319–327 ; *Watson* v. *Hayes*, 5 Myl. & Cr. 125 ; *Botsford* v. *Kebbell*, 3 Ves., Jr., 363 ; *Warner* v. *Durrant*, 76 N. Y. 133, 138 ; *Tucker* v. *Bishop*, 16 id. 402, 405 ; *Hillyer* v. *Vandewater*, 31 N. Y. S. R. 671, 676, 681 ; *Colton* v. *Fox*, 67 N. Y. 348, 353 ; *Smith* v. *Edwards*, 23 Hun, 223, 228 ; 88 N. Y. 92, 103, 104, 106, 107 ; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108, 113 ; *Levy* v. *Levy*, 33 N. Y. 97, 125, 126 ; *Hone* v. *Van Schaick*, 20 Wend. 564 ; *Schettler* v. *Smith*, 41 N. Y. 328, 334, 335 ; *McSorley* v. *Wilson*, 4 Sandf. Ch. 549, 558 ; *Thomson* v. *Carmichael*, 1 id. 387, 394, 395 ; *Benedict* v. *Webb*, 98 N. Y. 460, 466 ; *In re Russell*, 26 Wkly. Dig. 178 ; *Purday* v. *Hayt*, 92 N. Y. 446, 457 ; *Garvey* v. *McDevett*, 72 id. 556 ; *Ward* v. *Ward*, 105 id. 68, 74.) To say that the testator intended, if the widow and either Mary or Theresa should die within six months or a year or any other period after his death, less than the ten years after the death of the widow, the heirs of the daughter so dying should step into immediate possession of one-quarter of the estate, whether it was sold or not, is to reconstruct the will. (*Colton* v. *Fox*, 67 N. Y. 351 ; *Smith* v. *Edwards*, 88 id. 109.) As the trust attempted to be created was in contravention of the statute against perpetuities it was void in its entirety, and as to the whole estate attempted to be devised by the will and codicil, the testator died intestate. (*Benedict* v. *Webb*, 98 N. Y. 460, 466 ; *McSorley* v. *Wilson*, 4 Sandf. Ch. 545, 560 ; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108.) If it be held that the life estate in favor of Fanny Curtis is valid, then as the plaintiffs and defendants have a vested remainder in the estate as tenants in common they still have a right to maintain this action. (Code Civ. Pro. § 1533 ; *Ackerman* v. *Gorton*, 67 N. Y. 63, 66 ; *Savage* v. *Burnham*, 17 id. 461, 473.)

*M. M. Waters* for respondents. No estate, either at law or in equity, is ever to vest in the plaintiffs, but the whole estate provided for their benefit is that which may vest in the execu-

trices as trustees from the time of the division to the end of the second estate for life. (1 R. S. 729, § 60.) The ten year clauses in the will and codicil all relate to the same period, and that period is definitely marked in the beginning as coeval with the ending of the first estate for life, and coeval with the beginning of the second estate for life, and its absolute ending is as definitely marked by the ending of the estate for the second life. Since, as a power, it must end and be absorbed in the remainder in fee when the heirs shall become vested with the remainder, the fee includes every power. (*Hetzel* v. *Barber*, 69 N. Y. 1, 7; *Watkins* v. *Reynolds*, 123 id. 211; *Crooke* v. *County of Kings*, 97 id. 421.) This clause cannot be deemed to suspend the power of alienation. (*Robert* v. *Corning*, 89 N. Y. 225.) The only question that can arise under the Statute of Perpetuities is whether the trust, in relation to the converted fund which may vest in the executrices, operates to suspend the absolute power of alienation beyond the period allowed by law. (*Robert* v. *Corning*, 89 89 N. Y. 236; 1 R. S. 730, § 67; *Watkins* v. *Reynolds*, 123 N. Y. 211.) Even if the clause as to the ten years could in any event be deemed to attach an ulterior limitation to the estate in form the only result must be that of rendering the limitation void so far as it is unlawful, and the limitation will be rejected without in any manner affecting the valid provisions of the instruments. (*Savage* v. *Barnham*, 17 N. Y. 561–574; *Kennedy* v. *Hay*, 105 id. 134; *Tiers* v. *Tiers*, 98 id. 573.) There is no suspension of the power of alienation from the death of the testator for any period whatever except as to that one-half which is ultimately to vest in the heirs of Mary and Theresa, because the other beneficiaries are all in being at the death of the testator, and, therefore, their interests vested immediately at the testator's death. (2 R. S. 723, § 13.) The plaintiffs cannot be allowed to claim a decree construing a will in an action wherein they deny its validity and claim in hostility to it. (*Chipman* v. *Montgomery*, 63 N. Y. 221.) The only interests which these plaintiffs can ever take under this will must be that of *cestuis que trust* under the trust which ·

may result from the uncertain event of the continuance of the second life beyond the estate for the first life, beyond the discretionary period of ten years, or beyond the sale and division. (1 R. S. 729, § 60 ; Code Civ. Pro. § 1533.) When the uncertainties shall have been all determined, and all in favor of plaintiffs' future interest, yet that interest will be merely an interest in the fund to result from the conversion, and as to that interest the complaint states no cause of action for a partition or division. (*Hughes* v. *Hughes*, 30 Hun, 349.)

PARKER, J. The will and codicil are to be construed together as if they were one instrument. ( *Ward* v. *Ward*, 105 N. Y. 68.)

And in the construction now to be made we shall consider first whether the instrument operated to convert testator's real estate into personalty. It has long been the established rule that where executors are clothed with the power and duty to sell a testator's real estate and distribute the proceeds in the manner provided by the will that the real estate will be deemed converted into personalty. (*Everitt* v. *Everitt*, 29 N. Y. 39 ; *Power* v. *Cassidy*, 79 id. 602.) A consideration of the principles which led courts of equity to lay down this rule need not be indulged in in view of the long line of authorities establishing that property which passes by an instrument, whether will or contract, takes on the character which such instrument has impressed upon it.

It is necessary, of course, that the direction to convert be positive and explicit irrespective of all contingencies and independent of all discretion on the part of a donee of the power. Turning to the will and codicil it will be observed that the testator commanded the executrices to sell all his real estate, and not until the happening of that event is any distribution of the avails authorized.

There are other provisions relating to the disposition of income and postponing division of proceeds until after the death of testator's widow, but they need not be considered in this connection, for we are now only concerned in ascertaining

whether it was the intent of the testator that all of his real estate should be converted into money and the avails distributed as personal estate.

That such was his intention is apparent from the provisions already alluded to, taken in connection with the direction that after the death of testator's widow and the sale of all the real estate, the proceeds thereof, with all personal estate not specifically bequeathed, shall be divided into four equal shares, one of which shall be given to Helen C. Waters, another to Harriet S. Curtis, and " the remaining two shares or portions of my estate I give and bequeath to my said executrices in trust for them to hold and invest in good, permanent, well-paying securities, and the use, income and proceeds of one of said shares or portions are by them to be paid to, and for the use and benefit of my daughter Mary A. Underwood," and a like disposition of the other share for the benefit of Theresa L. Brown.

Respondent's counsel insists that the conversion will not take place until the land is actually sold, unless the executrices fail to execute the power within the limitation prescribed by the testator, in which event it will be deemed to take place as of the time when the sale is imperatively required to be made, which is at the end of ten years after the death of testator's widow, and he cites in support of his position *Savage* v. *Burnham* (17 N. Y. 561).

Whether the conversion shall be deemed to take place on the death of a testator or at some later period, depends on his intention as manifested by the provisions of the will.

If it provides in terms that a sale shall be made at some specified future time, or creates a trust with direction to sell only on the happening of a designated event, which might or might not happen, then the conversion would only take place on its occurrence, otherwise the general rule is that real estate will be deemed converted into personalty as of the date of the death of a testator. (Pomeroy's Eq. Juris. vol. 3, § 1162; *Fisher* v. *Banta*, 66 N. Y. 468.)

In *Moncrief* v. *Ross* (50 N. Y. 431), the sale was directed

to be made after the death of testator's mother, and the court held that it was clearly the intention of the testator that the conversion should not take place until the happening of that event.

So in *Savage* v. *Burnham* (*supra*) cited by respondent, the will provided that the sale should not take place until after the death of testator's widow, and it was held that the character of the estate would not be regarded as subjected to the change provided for in the will until such occurence, and in the argument supporting that conclusion the court said, "thus, in the present case, the real estate is to be sold and the proceeds to become personalty after the decease of testator's widow, and not before. When that period arrives the estate will be deemed to undergo the change directed by the will, whether then actually sold or not. Until then, the testator not only contemplated no change, but on the contrary, forbid it."

Now in this will, as modified by the codicil, the time of sale is not necessarily postponed to a specified future time, or until the happening of any event. The executrices are directed to sell all of the real estate, and the time of sale rests in their discretion. They are authorized to sell a part or the whole of the real estate at once, and they are not required to make the sale until ten years after the death of testator's widow. It will readily be seen, therefore, that the language of the testator does not indicate an intention to make this an exception to the general rule that a conversion must be deemed to take place at a testator's death.

The decision of this court in *Robert* v. *Corning* (89 N. Y. 225–239) seems to render further discussion unnecessary, as it is not seen how this feature of the two cases can be distinguished. In *Robert's* case the testator required his executors to sell all his real estate, but authorized them in their discretion to delay the sale for a period of three years. And the court held that this was an absolute conversion of the real estate into personalty as of the time of testator's death, the several distributees taking their interests as money, not as land.

In this case the testator also authorized a delay in making sale, and for a longer period it is true, but the fact that more time was given in which the donees of the power to sell could exercise their discretion does not affect the situation.

On the death of the testator, then all of his property became for the purposes of testamentary disposition, personal estate, and in the further consideration to be given to the questions presented, it must be steadily borne in mind that while frequent reference may be made to the provision relating to a sale of the real estate, and the time within which it is required to be done, still in legal effect the sale is of personal property. The will converted the real estate into personalty and the same instrument now directs the executrices to convert such property into money for the purposes therein designated.

We are thus conducted to a consideration of the question whether the provisions of the will and codicil relating to the disposition of the estate are in contravention of that part of the Revised Statutes, which provides that " the absolute ownership of personal property shall not be suspended by any limitation or condition whatever for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition ; or if such instrument be a will, for not more than two lives in being at the death of the testator."

An examination of the will discloses that the testator, at the time of its execution, intended first to have the income of all his property devoted to the use of his wife and two unmarried daughters during the life-time of his wife. Second, that thereafter his two unmarried daughters should each receive one-fourth of his entire estate, the remaining one-half to be retained by the executrices in trust for the benefit of his two married daughters, the income of one-fourth to be paid to each during life, and after death the principal to go to her heirs.

The two unmarried daughters were appointed executrices, and authorized in their discretion to sell all the lands of testator, either during the life-time of testator's widow or subse-

quently. Within ten years after the death of the testator's widow they were directed to divide all the estate, both real and personal, into four equal shares or portions, for distribution in the manner already alluded to. The testator declaring that his purpose in allowing the executrices ten years before requiring them to make a division was to prevent a sacrifice of the estate. He further provided that during such time as should elapse between the date of the death of his widow and the division, that his married daughters should have the income from the share or portion of the estate named for them, the income to be paid to them at least once a year. The important modifications of the will effectuated by the codicil are three in number.

First. It commands the executrices to sell all the real estate, but authorizes them to exercise their discretion whether a sale should be made during the life-time of the testator's widow or during a period of not exceeding ten years thereafter. Second. It provides that the division shall not take place until after the real estate shall all have been sold. Third. It declares that until such sale and distribution the married daughters shall not have the interest, benefit or income from the portion of the estate as provided in the will, but it shall belong absolutely to the widow and two unmarried daughters during the widow's life, and after her death and until the distribution, to the two unmarried daughters.

The will, as modified by the codicil, therefore, manifests the purpose and intention of the testator to be (1) that his executrices shall take possession of the entire estate and convert the real estate into money at such time as they shall deem proper during a period not exceeding ten years after the death of testator's widow.

(2) That during the life-time of the widow and until the real estate is sold, the executrices shall collect the interest and income of the estate and apply the same to the use and benefit of the widow and executrices, or the survivor of them, and after her death to the use and benefit of the executrices, or the survivor of them.

(3) That immediately thereafter the estate shall be divided into four equal shares, one of which each of the executrices shall receive personally. The remaining two shares to be retained by the executrices in trust, the interest and income of one of such shares to be paid to Mary E. Underwood, during her life, and at her death the principal to go to her heirs at law, and the interest and income of the other share to be paid to Theresa L. Brown during life, and at her death the principal to be paid to her heirs at law.

Having ascertained what disposition the testator intended to make of his property, we are to determine whether such disposition is in accordance with law. It will be observed that there was not in terms a devise or bequest to the executrices in trust, but the testator converted his real estate into personalty, directing the executrices to effectuate his purpose by a sale of the lands. Such estate he authorized them to enter upon and take possession of, collect the income and interest thereof, apply the proceeds for the use and benefit of the widow and executrices for a prescribed term, and at the expiration thereof make division of the avails in the manner directed.

Thus was vested in the executrices in trust the legal estate of all testator's property. (*Ward* v. *Ward*, 105 N. Y. 68; *Marx* v. *McGlynn*, 88 id. 357–375; *Vernon* v. *Vernon*, 53 id. 351; *Leggett* v. *Perkins*, 2 id. 297.) And it must continue to reside in them until the purposes of the trust, if legal, shall be accomplished.

The objects of trusts concerning personal property are not defined by statute, but they may be created for any of the purposes for which a trust in lands is authorized by statute, subject to the statutory rule against the suspension of ownership for not more than two lives in being at the death of the testator. And if a trust be created, by which the possession of personal property and the legal estate therein is vested in the trustees during the continuance of the trust, an absolute ownership of personal property is suspended within the meaning of the statute. (*Converse* v. *Kellogg*, 7 Barb. 597.) The

absolute ownership of personal property being suspended by the creation of a trust in the same manner as alienation of real estate. (*Hone* v. *Van Schaick*, 7 Paige, 233 ; *Graff* v. *Bonnett*, 31 N. Y. 9 ; *Cutting* v. *Cutting*, 86 N. Y. 522 ; *Genet* v. *Hunt*, 113 id. 158–163.)

And the duration of the suspense in a trust of personal property, like a trust in real estate, must be founded on lives. No term of years, however short, will satisfy the statute. (*Schettler* v. *Smith*, 41 N. Y. 328.)

Every trust has three elements closely connected it is true, but nevertheless susceptible of independent consideration. These are the trust. property, the trust objects and the trust term. The statute under consideration deals only with the last. The trust objects in this case are the widow and two unmarried daughters to whom, or the survivors of whom during the continuance of the trust is to be paid the income of the property.

The fact that there were in being at testator's death three persons to whom, or to the survivors of whom the income was to be paid, does not bring the trust within the condemnation of the statute, for there may be as many beneficiaries of the income of a trust as the testator may see fit to designate, provided the duration of the trust term does not extend beyond two lives in being at the time of his death. (*Crooke* v. *County of Kings*, 97 N. Y. 421.) In this case the trust term was not made dependent in any degree whatever upon the duration of the lives of the executrices or either of them. They were trust objects, entitled to share in the income, but not in any sense term measurers.

In the consideration of the duration of the trust term, as to the whole of the estate, and the trust term for one-half of the estate after division, we will first refer to the position of the respondents.

They concede that a trust was created comprising the entire estate, to continue during the life of the widow, but insist that on the happening of that event the active trust is to cease and the executrices thereafter are to act under a power in trust,

which requires them to convert the land remaining unsold into money, for the purposes of distribution in the manner provided by the will. That from the time of the division there is a further trust embracing one-fourth, to last during the life of Mary A. Underwood. And a like trust as to another one-fourth, to continue until the death of Theresa L. Brown. They urge that the period which may intervene between the death of the widow and that of Mary A. Underwood or Theresa L. Brown should be carved out of their respective lives, thus limiting the duration of the suspension of ownership of any portion of the estate to two lives.

*Robert* v. *Corning* (89 N. Y. 225) is invoked by respondents as an authority for the proposition that the authorization to sell at any time within ten years after the death of testator's widow is not a suspension of the power of alienation, because the power of sale was not fettered by the discretion conferred by the will.

But that question is not before us, and its consideration only tends in the direction of confusion, for as we have already observed for all testamentary purposes the estate must be treated as personalty, and we are only concerned in ascertaining whether it was the intention of the testator to create a trust of personalty for a term condemned by statute. In *Robert's* case there was not a trust term created of which the power of sale was an incident.

In *Manice* v. *Manice* (43 N. Y. 303), the executors were only given authority to apply the income during the life-time of testator's widow and the trust was, therefore, limited to the period during which they were directed to be applied.

But in this case it is conceded that a trust was created to continue during the life of the widow, and it is difficult to suggest any reason for holding that the testator did not intend a trust to last not only during the life-time of the widow, but for an indefinite period thereafter, not exceeding ten years, depending upon the exercise of the discretion committed to the executrices. And it may be observed that the effect of the codicil is to encourage them in the direction of delay, because, until finally

sold, they are made the beneficiaries of the income of the entire estate. The executrices were not only put in possession of the whole estate with authority to use and invest, but such possession is to continue after the death of the widow and until the time of division. During the period that may elapse between the time of the widow's death and the division, as well as before they are to collect and receive the income. And also, during that time as before, they are to apply all the income to the trust objects.

During the life-time of the widow the beneficiaries of the income of the trust fund are the widow and the unmarried daughters, or the survivor of them, and, after her death, the unmarried daughters, or the survivor of them. The power of sale can be exercised by the executrices in whole or in part, either during the life of the widow or within ten years thereafter. And until ten years shall elapse after her death, unless the executrices shall, before that time, exercise such power, the trust continues. Clearly then the testator has attempted to create a trust term embracing the whole estate not founded on lives, but on one life, and an indefinite period thereafter which may be of ten years duration.

The fact that the trust as to the entire property may, by the action of the executrices, be terminated on the death of the widow is of no moment if events may happen so that such estate may be extended beyond the statutory limitation. In the words of Judge GROVER, " to render such future estates valid they must be so limited that in every possible contingency they will absolutely terminate at such period or such estates will be held void." (*Schettler* v. *Smith*, 41 N. Y. 328–334.)

It is unnecessary to refer to the cases in which the courts have declared void trusts attempted to be founded for a term measured otherwise than by lives, because in violation of the Statute of Perpetuities or the statute relating to accumulations of personal property and expectant estates in such property but a few cases may be cited which serve to illustrate the various efforts which have been made in the past to avoid the

rigor of the statute.   In *Cruikshank* v. *Home of the Friend-less* (113 N. Y. 337) and *People* v. *Simonson* (126 id. 299) the trusts were to continue until the legislature should author-ize by appropriate enactment an incorporation such as testator desired should receive the estate; in *Garvey* v. *McDevitt* (72 N. Y. 556) the duration of the trust was sought to be limited to a period of four years immediately after testator's death; in *Killam* v. *Allen* (52 Barb. 605) until the payment and extinction of certain mortgages; in *Moore* v. *Moore* (47 Barb. 257) until the reformation of a person not exceeding three years; and in *Thompson* v. *Clendening* (1 Sandford Ch. 387) a trust of personalty was created to continue until a sale and distribution of real estate which could not take place until some one of several children became twenty-one years of age, and need not until the youngest child reached majority.

In addition to the trusts already considered the testator provided for a trust as to one-fourth of the estate for the life of Mary A. Underwood, and a further trust as to another one-fourth of the estate during the life of Theresa L. Brown. These trusts cannot take effect until after the expiration of the trust which is to terminate when the sale of the real estate takes place.   That fact, taken in connection with the further fact that the trust as to the entire estate for the indefinite period provided for, will not be terminated by the death of both Mary A. Underwood and Theresa L. Brown, renders unnecessary any discussion of the suggestion that such indefinite period not exceeding ten years may be carved out of their lives.

Having reached the conclusion that the trust terms sought to be created are in hostility to the statute, we must now con-sider whether there may be such a separation of the trusts as will preserve the trust authorized for the life of testator's widow.

If the provision for the benefit of the widow and the two unmarried daughters, during the life of the widow, is insepa-rably connected with the other dispositions of the will, and a necessary part of the general scheme for the disposal of testa-tor's property, then it must fall with them and the testator

died intestate. (*Benedict* v. *Webb*, 98 N. Y. 460.) But where several trusts are created, and those which render the entire disposition illegal can be separated and the legal upheld without doing injustice or defeating that which the testator might be presumed to wish, that which is illegal, or which added to others renders the whole illegal, may be cut off and the intention of the testator given effect so far as the statute will permit. (*Kennedy* v. *Hoy*, 105 N. Y. 134; *Van Schuyver* v. *Mulford*, 59 id. 426; *Manice* v. *Manice*, 43 id. 303.)

In *Kennedy's* case the will directed the application of the income of a trust estate to the support of testatrix's son and family during his life; after his death to his surviving children until they reach the age of twenty-one years, when the principal was to be divided among them, with other provisions in case of his son's death without issue. The trusts were held to be separable and that for the life of the son declared valid.

In *Van Schuyver's* case the income of the testator's entire estate was given first to his widow during her life; second, after her death to his two daughters during their lives, and then he devised the estate to the issue of such daughters. The courts declared the trusts separable and the provision for the wife valid, although the devise over was void.

And within the rule established by those and kindred cases, we think the trust created for the life of the testator's widow should be permitted to stand, and the testator held to have died intestate, except as to the estate created for her life.

This can be done without in any manner interfering with the general scheme adopted by the testator for the disposition of his property. On the contrary, it is in furtherance of his wish to as great an extent as the courts may be permitted to go.

It is apparent that his primary purpose was to provide that his widow and unmarried daughters should have the use of his entire estate during the widow's life. Subsequently, he concluded to give the unmarried daughters the benefit of such use for an indefinite period, but while effect cannot be given to such subsequent intention, it may and should be given to the first.

The conclusion thus reached requires an affirmance of the judgment dismissing the complaint by which is sought either a partition or a construction of the will.

Partition cannot be had because, in the view we have taken, the testator has converted his estate into personalty and vested the legal estate in the trustees during the life-time of the widow, and until her death a division of the property cannot be decreed.

Respondent cites *Chipman* v. *Montgomery* (63 N. Y. 221) as an authority for the assertion that the plaintiffs cannot maintain an action to construe the will because they claim in hostility to it, asserting its invalidity.

As testator's estate became personalty at the time of his death, *Chipman's* case may not be applicable to the situation presented, for courts of equity will often take jurisdiction to construe a will involving the disposition of personalty, where they would refuse if a judicial construction was sought for the mere purpose of determining title to real estate. ( *Wager* v. *Wager*, 89 N. Y. 161.) The reason for it is found in the fact that an executor is regarded as a trustee of the personalty which he holds in trust for the legatees or beneficiaries, so far as it is disposed of by will and as to the residue for those entitled to it under the Statute of Distributions. (*Bowers* v. *Smith*, 10 Paige, 193.) And courts of equity have ever regarded the supervision of trusts and trustees as peculiarly objects of equitable cognizance.

But we need not inquire whether a complaint might have been so framed as to have authorized a court of equity to assume jurisdiction to construe the will at the instance of next of kin, claiming in hostility to its provisions, for as complete relief can in due time be obtained in Surrogate's Court, the court was authorized on that ground, in the exercise of its discretion, to decline jurisdiction. ( *Wager* v. *Wager*, *supra*.) And if it should be determined that it might have construed the will, we should be obliged to assume that, in the proper exercise of its discretion, it declined to do so, for there is nothing in the record to show that the complaint was dismissed because of want of jurisdiction.

Whether the court best exercised the discretion belonging to it, is not a proper subject of inquiry here, but if it were, reasons could readily be assigned sustaining such position.

The judgment should be affirmed.

All concur, except VANN, J., not sitting.

Judgment affirmed.