---

(74 App. Div. 547.)

### In re HAMMOND'S ESTATE.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1902.)

1. WILLS—EQUITABLE CONVERSION.
    Where a life estate in a house and lot was devised by a will which authorized the executrices to sell all the property excepting the house and lot during the lifetime of the life tenant, the equitable conversion of the house and lot into personalty on the sale thereof dated from the time of the sale, and not from the death of the testatrix.

2. SAME—CONSTRUCTION—LAPSING OF LEGACY—LIFE ESTATE.
    Where a will devised a life estate in a certain house and lot, and by subsequent paragraphs directed a distribution of the residue of the estate, "including the proceeds of my said house and lot, after the death" of the life tenant, between testatrix's two sisters and a brother, one of whom was the life tenant, the legacy to the life tenant did not lapse on such tenant's death, and her heirs were entitled to one-third of the proceeds of the sale of the life estate.

Appeal from surrogate's court, Oneida county.

Proceedings by Jane M. Barnett, as executrix of the will of Maranda R. Hammond, deceased, for the final settlement. From certain portions of the decree of final settlement, certain heirs appealed. Reversed.

On the 8th day of May, 1898, one Maranda R. Hammond departed this life at the town of Paris, Oneida county, leaving a last will and testament in and by which she nominated and appointed her two sisters, Jane M Barnett and Laurinda L. Teachout, the executrices thereof. On the 19th day of September, 1898, such will was admitted to probate, and letters testamentary were thereupon duly issued to the executrices therein named. Thereafter, and on the 15th day of January, 1900, a decree was made by the surrogate's court of Oneida county settling the accounts of such executrices, and directing the distribution of the moneys in their hands, and upon such settlement the executrices accounted for all the real and personal property belonging to their testatrix, except the proceeds of the sale of a house and lot located in Sauquoit, N. Y., and a small amount of rent received therefrom. On the 12th day of March following, Laurinda L. Teachout died intestate, leaving, her surviving, the appellant, Charles W. Teachout, her husband, and Henderson W. Teachout and Webster A. Teachout, her sons by a former husband and her only heirs at law, there having been no issue of the second marriage. By the seventh clause of the will of Maranda R. Hammond, the use and possession of the Sauquoit house and lot were given and bequeathed to Laurinda L. Teachout for and during her lifetime, and by the eleventh and twelfth clauses it was provided as follows, viz.:

"Eleventh. All the proceeds of the residue of my personal and real estate which I may own at the date of my death, including the proceeds of my said house and lot, after the death of my sister Laurinda L. Teachout, I do hereby give and bequeath and devise unto my two sisters, Laurinda L.

---

¶ 1. See Conversion, vol. 11, Cent. Dig. §§ 46–48.

Teachout and Jane M. Barnett, and my brother Erastus D. Andrews, equally, share and share alike.

"Twelfth. I do hereby constitute and appoint my two sisters, Laurinda L. Teachout and Jane M. Barnett, executrices of this my last will and testament, and authorize and direct them, and the survivor of them, to sell all my real estate,· but not the house and lot during the life of my sister Laurinda L. Teachout, and to give all papers and necessary contracts and deeds for the same, and divide the proceeds of the said sales as ·directed above, and until sold my executrices are to take possession of all of my real estate, but not of the house and lot in the lifetime of my sister Laurinda L. Teachout, and to rent the same, and after paying for all proper repairs and insurance, including said house and lot, after the death of my said sister Laurinda L. Teachout, and to divide the net proceeds as above directed."

After the death of Mrs. Teachout the house and lot in question were sold, and the controversy herein arises over the distribution to be made of the proceeds thereof, it being claimed by Charles W. Teachout that, as administrator of his wife's estate, he is entitled to one-third thereof; while, upon the other hand, the two sons claim that it belongs to them as sole heirs at law of their mother; and still another claim is made by certain infant heirs at law of Maranda R. Hammond that as to such share of the proceeds Mrs. Hammond died intestate.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Stoddard M. Stevens, for appellants.

H. C. Sholes, for respondent Jane N. Barnett and George L. Waters.

D. C. Stoddard, for respondents Webster A. Teachout and Henderson W. Teachout.

William S. Mackie, special guardian for minor claimants.

ADAMS, P. J. Manifestly the determination of this appeal calls for the construction of the will of Maranda R.. Hammond, and an adjudication as to the nature and quality of the proceeds of the Sauquoit premises. The construction of wills, which are often expressed in language so· ambiguous as to· obscure and render somewhat uncertain the real purpose of the testator, is one of the most difficult and unsatisfactory duties with which courts have to deal; for it seldom happens that the facts of any two cases are so similar as to permit those of one to be used as a precedent for another, and as a consequence each case is dependent in a large measure upon its own circumstances for whatever assistance may be obtained in an effort to ascertain the true meaning of the language employed. There are, however, certain rules of construction which are applicable to all cases, and which when followed are often quite helpful in the determination of questions which without their aid would be well-nigh impossible of solution. One, and perhaps the most important, of these rules is that the court shall ascertain, if possible, the intention of the testator, and then give to the instrument an interpretation which shall accord with and effectuate such intention. To this end it is permissible to transpose words and phrases, or to insert or omit them; in short, to subordinate the language of the will to the intent of the testator, when such intent is once ascertained with any degree of·certainty. Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487. We think, however, that it will hardly be

necessary to resort to this means of construction in the present instance; for there can be little doubt as to what was really intended by the testatrix, although it must be conceded that such intent is somewhat inartistically expressed.

In the first place, it is perfectly plain that by the seventh clause of her will Mrs. Hammond gave to her sister Mrs. Teachout a life estate in the Sauquoit house and lot. It is equally clear that while by the twelfth clause she directed her executrices to sell all of her real estate, and convert the same into money, she expressly reserved the house and lot in question from the operation of such power of sale during the lifetime of Mrs. Teachout, the life tenant, and the life estate created by the seventh clause, not being subject to such power of sale, it would seem that the equitable conversion, if there be one, must date from the time of the sale instead of from the death of the testatrix, as would ordinarily be the case were the power to sell imperative and no time for its exercise specified in the instrument by which it is created. 7 Am. & Eng. Enc. Law (11th Ed.) p. 469; 3 Pom. Eq. Jur. § 1162; Underwood v. Curtis, 127 N. Y. 523–533, 28 N. E. 585; Clift v. Moses, 116 N. Y. 144, 22 N. E. 393; Moncrief v. Ross, 50 N. Y. 431. That the sale of the Sauquoit premises after the death of Mrs. Teachout did work an equitable conversion of what was theretofore real property into personal property must, we think, be conceded. The testatrix not only directed that the sale should be made, but she also directed what disposition should be made of the proceeds; and it is difficult to read the twelfth clause of her will without reaching the conclusion that such sale and disposition were for the sole purpose of distribution of the residuum of her estate. Fisher v. Banta, 66 N. Y. 468; Morse v. Morse, 85 N. Y. 53–59; In re Russell, 59 App. Div. 242, 69 N. Y. Supp. 563.

With this much settled, it remains only to determine who is entitled to the proceeds of such sale. By the seventh clause of her will the testatrix gives such proceeds to her two sisters and a brother; but as one of the legatees to whom this bequest is made is Mrs. Teachout, and as by the express terms of the will there could be no "proceeds" until after her death, obviously she could not in person take under the will, and it is because of this circumstance that it is insisted by certain of Mrs. Hammond's heirs that the legacy to Mrs. Teachout lapsed upon her death. It is said by Redfield in his work upon Wills (volume 2, p. 442) that "the courts have for a long time inclined very decidedly against adopting any construction of wills which would result in partial intestacy, unless absolutely forced upon them." This tendency, it is further said, is due in part to a rule of policy, but in a much larger measure to a desire on the part of the courts to carry into effect the presumed intention of the testator. But, whatever may be the reason for the rule, it is one which has been frequently enunciated, and one which may now be regarded as well settled. Lyman v. Lyman, 22 Hun, 261; Vernon v. Vernon, 53 N. Y. 351–361; Byrnes v. Baer, 86 N. Y. 210–218; Provoost v. Calyer, 62 N. Y. 545; Schult v. Moll, 132 N. Y. 122, 30 N. E. 377.

We think that such a construction as the one contended for is not "forced" upon us in the present case, for reasons which may be briefly

stated. It is the settled policy of the law to favor the vesting of legacies, provided that result can be attained without doing violence to the obvious intent of the testator (Bowditch v. Ayrault, 138 N. Y. 222, 33 N. E. 1067); and consequently the question of when a legacy vests is, generally speaking, one of intent.

It requires but a casual reading of Mrs. Hammond's will to arrive at the conclusion that it was apparently the intention of the testatrix to provide her sister Mrs. Teachout with a home during her lifetime, and also to reserve to her an absolute interest in the property assigned to her for such a home to the extent of one-third of the value thereof. To this end she provided that she should have a life interest in the entire property, and a third interest in the proceeds thereof when it should be sold. Of course, as we have already suggested, she could not come into the personal enjoyment of the latter provision, because of her decease; but can there be any doubt as to the design of the testatrix that it should be hers? Clearly not; and, if so, then it requires no forced construction of the will in question to hold that the legacy to Mrs. Teachout of one-third of the "proceeds" of the Sauquoit house and lot vested in her, subject to her life estate in the entire premises, upon the death of Mrs. Hammond. On the contrary, such a construction is one which is natural, entirely consistent with the other provisions of the will, and in harmony with the obvious intent of the testatrix. These views lead to a reversal of that part of the decree appealed from.

So much of the decree of surrogate's court as is appealed from reversed, except as to such portion thereof as is expressly waived by the written stipulation of the attorney for Charles W. Teachout, as administrator, etc., and the case remitted to that court for such further proceedings as may be necessary, including the awarding of costs to such party or parties, and from such fund, as to that court may seem proper. All concur, SPRING, J., in result.