In the Matter of the Estate of JOHN M. TIENKEN, Deceased.

Surrogate's Court, New York County, December 31, 1941.

*George B. Fargis*, for the petitioner.

*C. Murray Kavanagh*, for the heirs of Carsten Tienken, deceased, respondents.

*Holm, Whitlock & Scarff*, for the executors, etc., of Bertha Tienken, deceased, respondents.

*Louis Wendel*, special guardian.

DELEHANTY, S. After providing for a residuary trust for his widow by paragraph fifth of his will deceased directed that upon her death or remarriage two funds — each of $10,000 — were to be set apart for the income benefit respectively of his brothers, Louis and Carsten, and then gave all that was left of the remainder of the widow's residuary trust to a nephew. Deceased died on April 17, 1922. He was predeceased by the nephew just referred to. He was survived by each of his brothers. His widow survived unmarried until January 7, 1941, when she died. The secondary trusts never came into operation since the widow outlived each of the intended beneficiaries of such trusts. As a consequence the remainder interest in the original trust for the benefit of the widow created by paragraph fifth of the will passes as intestate property.

Deceased was possessed at his death of both realty and personalty. The personalty was worth approximately $27,500 at death and his realty interests (consisting of undivided tenancies in common with John H. Wohltmann) were appraised at approximately $65,000. By paragraph fourth of his will deceased recited in detail his business relationships with his co-owner at the date of the will and made express provision that for a period of six months after his death his co-owner would have the right, on terms stated in the will, to purchase undivided interests of deceased in realty owned in common. Within the six-month period the co-owner exercised the right to purchase the outstanding estate interest in six of the eight parcels held in common tenancy. Within the same interval the executors sold to outsiders the remaining two parcels. The widow's estate now claims that the interests of deceased in the real property so acquired by the co-owner were converted by deceased at his death into personalty and hence that the estate of the widow is entitled to her share in intestacy of the proceeds of such six parcels.

When deceased died in 1922 the statute of descent then in effect (Dec. Est. Law, § 87) provided that the realty of an intestate who left a widow but no descendants passed to surviving brothers and sisters and their descendants (if living), subject to the dower right of the widow. At that date the Statute of Distribution provided (Dec. Est. Law, § 98) that the personalty of such intestate passed to the extent of one-half plus $2,000 to his widow and the balance to the surviving brothers and sisters or their descendants. If, therefore, the real property in question is deemed to be converted as at death the widow's share in intestacy will be markedly increased.

Equitable conversion is decreed when necessary to carry out the ascertained intention of a testator (*Matter of Seymour*, 209 App. Div. 655; *Harris* v. *Achilles*, 129 id. 847.) An absolute direction in a will commanding an executor to sell realty of a deceased is held to establish the intent of the testator to deal with the proceeds as personalty and so held to effect an equitable conversion as of the date of death. (*Greenland* v. *Waddell*, 116 N. Y. 234.) The intention of this testator on the subject of conversion is to be gathered from paragraphs fourth, tenth and twelfth of his will. Paragraph fourth contains a statement of his major purposes in connection with this realty. As already stated, there is expressly granted a six-month interval after death within which his co-owner could claim the benefit of the direction in the will and could buy deceased's share in the realty. Supplementary to and entirely consistent with this are the directions in paragraph tenth of the will

which grant to the executors of deceased (subject to the co-owner's option if exercised) the power to sell, to fix terms of sale, to mortgage and to lease the realty. Finally paragraph twelfth provides expressly that the executors and trustees are given " the right and power to hold * * * any real or personal property * * * " owned by the deceased at his death. In addition the trust provisions expressly refer to the collection of rents. Elsewhere in the will the disposition of the property of deceased is referred to as having been " devised and bequeathed." Collectively these provisions of deceased establish that he intended no conversion at the time of his death but on the contrary intended that the realty should be held as such until his co-owner had the opportunity to exercise the option and then should be held and dealt with as part of the major trust for the widow if the co-owner failed to exercise the option. There is here in the plainest terms a direction for conversion determinable by the co-owner to the extent that he exercised his option and determinable otherwise by the executors and trustees in their discretion. The meaning of this will must be held to be that conversion was to take place only at a time subsequent to death ( *Underwood* v. *Curtis*, 127 N. Y. 523; *Vincent* v. *Newhouse*, 83 id. 505; *Matter of Satterwhite*, 262 id. 339; *Wechsler* v. *Drey*, 203 App. Div. 692) and that no equitable conversion as at death was effected.

Equitable conversion does not occur until there is a duty on the part of the trustee to sell. (*Chamberlain* v. *Taylor*, 105 N. Y. 185; *Underwood* v. *Curtis*, *supra; Rockland-Rockport Lime Co.* v. *Leary*, 203 N. Y. 469; *Matter of Maguire*, 251 App. Div. 337.) In *Underwood* v. *Curtis* (*supra*) the court said (p. 533) that if a will provides that a sale shall be had only on the happening of a designated event which might or might not happen " the conversion would only take place on its occurrence." And in *Rockland-Rockport Lime Co.* v. *Leary* (*supra*, 481) the court said: " The maxim underlying the doctrine of equitable conversion rests on a duty to do something, but in this case until the option was exercised there was no duty and it could not be known whether there ever would be a duty." On the authorities cited and on the tenor of this will the court holds that for the period of six months next following deceased's death there not only was no duty to sell imposed upon the executors but an absolute prohibition against such sale. For all these reasons the court holds that there was no equitable conversion of the realty as at deceased's death and holds that the widow's estate has no claim to share in its proceeds.

The special guardian contests the claim of the estate of the widow that she is entitled to share in the intestate property —

whether originally personalty or realty. The basis to the special guardian's position is that the will of deceased states that the provisions therein for her are in lieu of dower. The provision in question is found in clause fifth of the will which creates a residuary trust with the income payable to the widow until death or earlier remarriage. The text goes on to say: " This provision for the benefit of my wife shall be in lieu of her dower in my estate." The acceptance of the gift in the will effectively terminated the widow's dower interest in the realty owned by deceased during coverture but it did not operate to extinguish any right of hers in the personalty. (*Matter of Hayman*, 136 Misc. 199; affd., 229 App. Div. 853; affd., 256 N. Y. 557; *Matter of MacIntyre*, 164 Misc. 895.) Accordingly the widow is entitled to share in the personal estate as constituted at date of death according to the rights which were vested in a surviving widow under the Decedent Estate Law in effect when deceased died in 1922. The objection of the special guardian in respect of the widow's interest in the personalty of deceased is overruled.

Ruling is necessary in respect of a purported agreement with one Martin Fedden made by Carsten Tienken, a brother of deceased, who survived him. Fedden was cited in this proceeding. He interposed no objections and filed no appearance herein. On the stipulated facts and on the opinion of the expert in German law the court holds that the agreement is unenforcible in Germany where made and hence is unenforcible here in respect of the property which otherwise would pass to Carsten Tienken. In addition the court holds that the contract in its terms does not contemplate the property now to be distributed and so is inoperative in any event in respect of this property. (*Matter of Gifford*, 279 N. Y. 470.)

The court holds on the stipulated facts and other proof that Carsten Tienken legally adopted under German law one Martha Wohltmann who now survives. On the facts shown she is entitled to take the property distributable to Carsten Tienken had he lived. The facts permit the court to find as it does that the nearest blood relatives of Carsten Tienken were the persons listed on the chart which is part of the proof. Among these persons is included Martha Wohltmann whose marriage name now is Martha Ferkin. Except for the adoption she would have a limited interest in the benefits accruing to Carsten Tienken but by reason of the adoption she takes the whole of such property.

Submit, on notice, decree construing the will and settling the account accordingly.