(75 Misc. Rep. 47.)

### In re JONES' ESTATE.

(Surrogate's Court, Oneida County. December, 1911.)

1. WILLS (§ 448*)—CONSTRUCTION—PRESUMPTION AGAINST INTESTACY.

   It is presumed that a testator did not contemplate intestacy, and a construction that will result in even partial intestacy is not to be adopted, if a different construction is permissible.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 964; Dec. Dig. § 448.*]

2. WILLS (§ 856*)—LAPSE OF LEGACY—"SURPLUS."

   Where a will gives all testator's property to certain persons, and provides that if, after paying these bequests, there should be a surplus left over, it shall be paid to the named beneficiaries pro rata, the word "surplus" includes the shares of any of the beneficiaries who have died during the lifetime of testator.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 2172; Dec. Dig. § 856.*

   For other definitions, see Words and Phrases, vol. 8, pp. 6816, 6817; vol. 8, p. 7811.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. WILLS (§ 524*)—CONSTRUCTION—"BENEFICIARIES"—"BENEFICIAL."**
In a will giving all testator's property to certain persons, and then providing that, if there should be a surplus, it should be paid to the named beneficiaries pro rata, the term "beneficiaries" is limited to those who survive the testator; "beneficial" being defined as receiving, or entitled to have or receive, advantage, use, or benefit.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1116–1127; Dec. Dig. § 524.*

For other definitions, see Words and Phrases, vol. 1, pp. 747–750; vol. 8, p. 7589.]

Proceedings for the judicial settlement of accounts of the executor of the estate of Jabez H. Jones, deceased. Objections to the account overruled, and account allowed and settled as filed.

A. S. Malsan, for executor.

Milton Carter, for Everett Williams, John H. Williams, and Thomas Williams.

SEXTON, S. March 13, 1901, the deceased made a will; and letters testamentary were issued November 14, 1907, to Peter Williams, who filed his final account June 20, 1911. Ann Williams, a sister of deceased, was named as legatee in said will, but died before the testator, leaving Everett, Thomas E., and John H. Williams, sons, who now claim the share of their mother as next of kin, on the ground that deceased died intestate as to the same. The executor opposes this view, and contends that the will disposes of the entire estate. The testator left neither descendants nor real estate, but did leave personal property inventoried at $21,983.30.

One of the witnesses to the will, not a lawyer, drew it on a will blank. The paragraph to be considered reads as follows:

"First. After all my lawful debts are paid and discharged, I give, devise and bequeath all my property both real and personal as follows (viz.): The sum of five hundred dollars to be used for the purpose of paying the expenses of my funeral and providing a monument to mark my last resting place; to my nephew William R. Jones, Gouverneur, N. Y., the sum of one thousand dollars; to my niece, Mrs. Elizabeth Jones of Alder Creek, N. Y., the sum of one thousand dollars, and to her brother William H. Jones, the sum of eight hundred dollars; to Walter Jones, adopted son (so-called) of my deceased brother William H. Jones the sum of seven hundred dollars; to Grace Nickerson of Indian Orchard, Mass. the sum of five hundred dollars; to my niece Mary Ann Millard of Turin, N. Y., the sum of one thousand dollars; to my nephew Thomas D. Roberts of Utica, N. Y., the sum of one thousand dollars; to my nephew Humphrey Roberts of Turin, N. Y., the sum of one thousand dollars; to my sister, Mrs. Ann Williams of Lowville, N. Y., the sum of two thousand dollars; to Mrs. Elizabeth Jones widow of my deceased brother David H. Jones of Chicago, Ill. the sum of five hundred dollars; to my nephew D. Milton Jones of Milwaukee, Wis. the sum of five hundred dollars; to my nephew Samuel H. Jones of Chicago, Ill. the sum of one thousand dollars; to my sister Mrs. Martha J. Williams of Whitesboro, N. Y., the sum of two thousand dollars; to my sister-in-law Mrs. Jane Jones of Scranton, Iowa, a certain mortgage that I hold against Marshall E. Jones of Scranton, Iowa; and if after paying these bequests there should be a surplus left over it shall be paid to the above-named beneficiaries pro rata, with the exception of the last named beneficiary, who shall not be included in such surplus as a beneficiary."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The clause that the contention centers on is next to the last one, and reads:

"And if after paying these bequests there should be a surplus left over, it shall be paid to the above-named beneficiaries, pro rata."

The contestants affirm that this is a residuary clause, and that the legacies of those dying before the testator lapsed, and that the surviving legatees cannot profit thereby, as they presumptively take as tenants in common and not as joint tenants, under the Real Property Law (Consol. Laws 1909, c. 50); hence the lapsed legacies and the pro rata proportion of the "surplus" passed under the statute of distribution to the next of kin.

[1] Nature abhors a vacuum and the courts abhor intestacy. You cannot find two horses gaited alike, nor can you find two wills worded alike; hence the books furnish but little help beyond laying down some unyielding general rules:

"In all cases it is the duty of the court, in construing a grant or will, to search out the intention of the testator or grantor, and construe the instrument so as to carry out that intention, unless such construction is absolutely inconsistent with some well-settled rule of law." Carr v. Smith, 25 App. Div. 214, 49 N. Y. Supp. 351, affirmed 161 N. Y. 636, 57 N. E. 1106; Tilden v. Green, 130 N. Y. 72, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487.

"It is the duty of courts, in construing even doubtful and obscure provisions of a will, to so interpret them as to uphold rather than to render them void." Hopkins v. Kent, 145 N. Y. 367, 40 N. E. 4.

"Where two constructions are possible, one of which will sustain, and the other defeat, the will, the one sustaining it should be preferred." 29 Am. & Eng. Ency. of Law, 350; Vernon v. Vernon, 53 N. Y. 357; Kalish v. Kalish, 166 N. Y. 368, 59 N. E. 917; Mills v. Tompkins, 110 App. Div. 212, 97 N. Y. Supp. 9.

"There is always a presumption that the testator did not contemplate intestacy, and a construction that will result in even partial intestacy is not to be adopted, if a different construction is permissible." Matter of Miner, 146 N. Y. 121, 40 N. E. 788; Johnson v. Brasington, 156 N. Y. 181, 50 N. E. 859; Matter of Hammond, 74 App. Div. 547, 77 N. Y. Supp. 783; Ward v. Stanard, 82 App. Div. 386, 81 N. Y. Supp. 906; Simpson v. Trust Co., 129 App. Div. 200, 113 N. Y. Supp. 370.

The fact that a testator made a will at all creates a fair presumption that he intended to dispose of all of his property (Byrnes v. Baer, 86 N. Y. 210), and this presumption is strengthened when it is considered in connection with the rule which frowns on even partial intestacy (Mills v. Tompkins, supra; Schult v. Moll, 132 N. Y. 122, 30 N. E. 377; Johnson v. Brasington, supra). In this state the doctrine is firmly established that, in a will of personal estate, the testator is presumed to speak with reference to the time of his death. Lynes v. Townsend, 33 N. Y. 558.

[2] On the subject of intent the testator is always a proper subject for analysis. The man under consideration at death had $7,990.80 in bank, and $13,930 in 15 different investments, with some personal effects, which made a total estate of $21,983.30. These investments were so shrewd that the final account showed an increase of $23,111.31, or a gross estate of $45,094.61, and without the loss of a cent. This splendid business showing on his part aids in the presumption that he had his will drawn the way he wanted it, and used words to that end

in their ordinary sense. A reference to the will shows how clearly the testator comprehended the objects of his bounty. He gave the correct names and addresses in various states of 14 legatees, with their degree of relationship to him, varying the size of the legacies presumptively in keeping with their necessities. At the very beginning of his will he says, "I give  *  *  *  all my property," and then names his relatives who are to have it, and then adds, "And if after paying these bequests there should be a surplus left over, it shall be paid to the above-named beneficiaries pro rata," with one exception. If all the legatees had survived the testator, they unquestionably would have taken his entire estate.

[3] The will is dated March 13, 1901, and the testator died August 29, 1907; hence it may be assumed that his health was good when he made his will, and, contemplating that some of so large a number of legatees might fail to survive him, he sought to provide against the contingency of partial intestacy by providing that those only who should survive him should share in his estate. He said to his executor: "If after paying these bequests," meaning payment to those legally entitled at distribution, "there should be a surplus left over, it shall be paid to the above-named beneficiaries pro rata," meaning that those persons who survived him, thereby becoming "beneficiaries," should share, pro rata, in any "surplus" arising from lapsed legacies, unbequeathed property, or increase.

"In the absence of a contrary intent, words descriptive of the objects of a gift refer to the death of the testator, and not to the date of the will or period of execution." Van Vechten v. Van Veghten, 8 Paige, 116; Van Alstyne v. Van Alstyne, 28 N. Y. 377; Lynes v. Townsend, 33 N. Y. 564; 29 Am. & Eng. Ency. of Law, 355, and cases cited.

The objects of his gift and the sharers in the surplus he called "beneficiaries," a name which could only be given to those legatees who survived him under the above definition. In Gruver v. Wood, 174 Mass. 540, 55 N. E. 315, the Supreme Court, construing "to the several beneficiaries under this will, except to N., share and share alike," held that the widow, who clearly was given only $3,000, in fulfillment of an antenuptial agreement, still, being a beneficiary under the will, and not having been excepted from the residuary clause, was entitled to share in it; the court saying:

"Yet she receives something under the will, and in the natural and ordinary sense is a beneficiary, and we think the term was used by the testator in this sense."

"The question is, not what the testator had in contemplation when he made his codicil, but what the words he used will embrace, according to their ordinary signification, which must prevail, unless qualified by other expressions in the instrument." Sweet v. Geisenhainer, 3 Bradf. 122.

The word "surplus" means "the remainder of a thing, or that which is left from a fund which has been appropriated for a particular purpose"; and as here used it means that which is left "after paying these bequests  *  *  *  to the above-named beneficiaries," as stated by the testator. As only "beneficiaries" could share in the "surplus," it must, therefore, comprehend the legacies of those who failed to survive the testator, for the reason that the testator appropriated his estate for

a particular purpose, namely, to be paid to his "beneficiaries" in specified sums, and, after such payment, he appropriated the "surplus" or remainder, if any, to these same "beneficiaries" to be divided among them pro rata, except one.

"Beneficial" means "receiving, or entitled to have, or receive, advantage, use, or benefit." 2 Am. & Eng. Ency. of Law, 169. "Beneficiary," according to Webster, means "the recipient of another's bounty." It seems clear that the testator intended that only those named by him who should survive him should share in his estate, and that they should have it all and divide it as indicated by him. One of the witnesses to the will, not a lawyer, drew it, hence the testator was without counsel. An intention not to die intestate may generally, under such circumstances, be presumed. Matter of Morrisey, 72 Misc. Rep. 573, 131 N. Y. Supp. 986.

Under the circumstances of this particular will, and in view of the language used, and of the fact that the word "and" conjoins the legacies and the surplus, and all in practically one sentence, indicating an intention of giving to the survivors only one legacy, made up of a specified sum, to which was to be added a pro rata of the "surplus," it seems to me that the general intention not to die intestate is clearly indicated and should be presumed. Lamb v. Lamb, 131 N. Y. 227, 30 N. E. 133; Williams v. Pettit, 138 App. Div. 394, 122 N. Y. Supp. 746. If the clause under consideration is a residuary clause, as claimed by contestants, unless it "clearly limits its operation to the contrary, it will be construed to dispose of all of the testator's estate remaining undisposed of, or which may be added by lapses, or otherwise; and, if it is an ambiguous residuary clause, it will be construed broadly rather than narrowly." Williams v. Pettit, supra.

At the time of the testator's death, when the will became operative, Walter Jones, Ann Williams, Elizabeth Jones, and Jane Jones had died. Their deaths did not affect or alter the provisions of the will at all, but left the situation the same as if they had not been mentioned in it. These persons, not having taken the primary gift, acquired no right in the "surplus." The primary gifts, or legacies, and the "surplus" constituted only one fund, which was to be divided among the beneficiaries, the legacies to be first paid: then to each was to be added such a proportionate amount of the "surplus" as would dispose of the entire estate.

The objections to the executor's account herein are overruled, and said account is hereby allowed and settled as filed.

Decreed accordingly.