## HARRIS v. ACHILLES.

(Supreme Court, Appellate Division, Fourth Department.  January 20, 1909.)

1. CONVERSION (§ 16*)—CONSTRUCTION OF WILL—CONVERSION OF REALTY INTO PERSONALTY.

Testator gave to his wife and daughter the use and control of the residue of his property, real and personal, so long as they or either of them should live, with the right to use any or all of the principal sum for their support, and empowered them to sell or mortgage the real estate. The will remained unchanged, though the daughter and testator's son and grandson to whom the remainder was left predeceased testator several years.  After the latter's death, his widow sold the real estate, though it was not absolutely necessary to do so, as the amount used by her out of the proceeds could have been realized by mortgaging.  *Held*, that testator intended to provide for the comfort and support of his wife during her life, and to leave the property, if any, remaining after her death to be disposed of under the law of descent and distribution, and did not intend that there should be a conversion of the realty into personal property, and hence the balance of the proceeds of the sale was real estate, and belonged to testator's estate.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 38–43; Dec. Dig. § 16.*]

2. CONVERSION (§ 15*) — TESTAMENTARY PROVISION — POWER OF SALE—INTENTION OF TESTATOR.

The intention of a testator that there should be a conversion of his realty into personal property must appear plainly, distinctly, and unequivocally.  It may be manifested in various ways:  (1) By a positive direction to the executor to sell; (2) by the necessity of a sale in order to carry out the general scheme of the will; and (3) when testator's purpose would fail without such a conversion.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. § 28; Dec. Dig. § 15.*]

3. CONVERSION (§ 16*)—TESTAMENTARY PROVISION—POWER OF SALE.

In order to constitute a conversion of testator's realty into personal property, it must be the duty of, or obligatory on, the executor to sell in any event.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. § 38; Dec. Dig. § 16.*]

Submission on agreed facts of controversy between Arthur Harris, as administrator c. t. a. of John Harris, deceased, and Elizabeth A. Achilles, as administratrix of Agnes Harris, deceased.  Judgment for plaintiff.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Ramsdale & Church, for plaintiff.

Edwin L. Wage and Thomas A. Kirby, for defendant.

WILLIAMS, J.  Judgment should be ordered in favor of plaintiff, with costs.

The questions submitted involve the construction of the will of John Harris.  It was made October 14, 1892, but the testator did not die until February 5, 1903, 10 years later.  When the will was made, the testator had a wife, daughter, son, and grandson living.  Prior to his death the daughter, son, and grandson died, but the wife was still liv-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing. She died August 10, 1907, 4½ years after her husband's death. The controversy here is between the representatives of the two estates of the testator and his wife, and the question is which estate is entitled to a fund of $1,300, the balance of the proceeds of real property owned by the testator when he died.

The will, after providing for the payment of debts and funeral expenses and the care of a cemetery lot, provides:

"Third. I give, devise and bequeath to my wife, Agnes Harris, and my daughter, Martha Harris, the use, management and control of all the rest and residue of my property, real or personal, wherever situate, so long as they or either of them shall live, with the right to use any or all of the principal sum for their support, if in their judgment it shall be necessary so to do.

"Fourth. If, after the death of both my said wife and daughter, there shall remain unexpended the sum of fifteen hundred dollars of my estate, or property worth fifteen hundred dollars, I give, devise and bequeath to my grandson, William Harris, the sum of five hundred dollars ($500.00), and all the rest and residue to my son, Noah Harris. But should the part of my estate unexpended at the time of the death of my said wife and daughter be less in value than fifteen hundred dollars, in such event I will to my said grandson, William Harris, one-third of said remainder, and the rest and residue to my son, Noah Harris.

"Lastly. I nominate and appoint my wife, Agnes Harris, and my daughter, Martha Harris, to be executrixs of this, my will, giving unto them full power to sell or mortgage any real estate I may own at the time of my death."

When the will was made and when the testator died, he owned a house and lot worth about $2,500, and not to exceed about $500 of personal property. The will was admitted to probate, and the widow was made and served as sole executrix until she died. September 6, 1904, one year and seven months after testator's death, the widow mortgaged the house and lot, pursuant to the power contained in the will for $1,000, and received the amount thereof. April 3, 1906, three years after testator's death, she sold the house and lot by virtue of the power given her by the will, subject to the mortgage, and received therefor $1,512.50. She deposited $1,462.50 of this amount to her personal credit in bank, retaining the balance of $50 herself. June 4, 1906, she transferred $1,100 of this amount to two savings banks, or rather one savings bank and one trust company, taking books therefor in her own name. She left the balance of $342.50 in the same bank, taking a certificate of deposit therefor in her own name. September 25, 1906, February 13, 1907, and June 3, 1907, she took from the latter bank in cash $42.50, $50, and $50, and on the latter day took a certificate of deposit for $200, the balance. This $200 and the $1,100 in the savings bank and trust company—$1,300 in all—she held at the time she died, August 10, 1907. This amount, with interest owing thereon by the several banks, is the subject of this controversy.

The real question is whether upon the agreed facts there was an equitable conversion of the house and lot into personal property. If not, then the fund in question was real estate, and, when the widow died, it belonged to the husband's estate, and the plaintiff is entitled to recover the same. If there was such conversion, then the fund at the death of the husband, being personal property, passed to the wife and became hers under subdivision 3, § 2732, Code Civ. Proc. (Pomroy v. Hincks, 180 N. Y. 73–75, 72 N. E. 628), and the defendant is entitled

to recover the same. The will was allowed to remain unchanged to the time of the testator's death, though the daughter, son, and grandson had died years before. His real design, therefore, must have been to provide for the comfort and support of his wife during her life, and to leave the property, if any remained after her death, to be disposed of under the law of descent or distribution. She was only to use it for her support, but she might use not only the income, but the corpus itself if in her judgment it was necessary; and, in order to enable her to do this, she was given the power to mortgage or sell any real estate left at his death. There was no mandatory direction to sell the real estate, nor was it necessary to sell it in order to accomplish the purpose intended by the testator. It was left wholly to the judgment of the wife whether it was necessary or whether she could get on with the personal property, the income of the real estate, or by mortgaging the same. She lived 4½ years after the testator's death. She apparently did not find it necessary to sell the real estate. She mortgaged it at first; then later she sold it under the power of sale, but during the remainder of her life used only about $200 of the amount realized from such sale. She could readily have realized this sum by mortgaging, and therefore it was not absolutely necessary to sell the property. Under these circumstances, we think there was no intention by the testator that there should be a conversion of his realty into personal property. It was a matter of intention, and such intention must appear plainly, distinctly, and unequivocally. It might be manifested in various ways: (1) By a positive direction to the executor to sell. (2) By the necessity of a sale in order to carry out the general scheme of the will. (3) When the purpose of the testator would fail without such a conversion. (4) In order to constitute a conversion, it must be the duty of, or obligation upon, the executor to sell in any event. These principles are laid down in Phœnix v. Trustees of Columbia College, 87 App. Div. 438, 444, 84 N. Y. Supp. 897, affirmed on opinion below, 179 N. Y. 592, 72 N. E. 1149. See, also, cases cited in such opinion. This is a fair statement of the law applicable to the question in controversy here, and, in view of the agreed facts and of the law so laid down, we must conclude there was no equitable conversion of the realty —the house and lot—into personal property. There was no positive direction in the will to sell; there was no necessity to sell in order to carry out the general scheme of the will; there was no duty or obligation imposed upon the executor by the will to sell. The intention to convert the realty into personalty did not appear distinctly or unequivocally. Therefore the fund in question at the death of the testator was real estate, belonging to the plaintiff, and he should recover the same.

Judgment directed for the plaintiff upon the submission, with costs. All concur.