SIGMUND WECHSLER, as Trustee under the Will of ABRAHAM
   BERNHEIMER, Deceased, Respondent, *v.* KATE B. DREY and
   Others, Defendants, Impleaded with JULIA HANAUER and Others,
   Appellants, and IRVING S. BERNHEIMER and Others, Respondents.

First Department, December 1, 1922.

**Wills — construction — life tenant of real estate entitled to income of
   proceeds where property sold with her consent under provision in will
   — will provided for trust fund for one person and devised life estate in
   real property to same person without remainder over and with power
   to sell with consent of life tenant — will directed sale of all real prop-
   erty, made specific bequests, and then granted residue to lawful issue
   of deceased brother with direction that residuary estate should not be
   less than one-half of entire estate — proceeds of sale of real estate
   devised for life did not become part of trust fund — estate in remainder
   after life estate vested in residuary legatees on testator's death —
   principal of trust fund vested in residuary legatees at death of testator
   subject to trust.**

A life tenant is entitled to the income from the proceeds of real property devised
   to her for life without remainder over, where the real property is sold with her
   consent pursuant to the terms of the will.

In an action for the construction of a will it appeared that the testator made cer-
   tain specific bequests and then gave the life estate in certain real property to a
   named person, and provided that the executors should set up a trust fund for
   the benefit of the life tenant from other property sufficient to produce a certain
   income; that the will directed the executors to sell the real estate which was
   devised for life at the death of the life tenant or before, with her consent, and to
   sell all other real estate of the testator; that the will made certain specific
   bequests and provided that after the payment of said bequests all the residue,
   both real and personal, should go to the lawful issue of a deceased brother, with
   the provision that said residue should not be less than one-half of the entire
   estate and in case it was, then the other bequests, with the exception of the
   life estate, should be reduced *pro rata.* The property in which the life estate
   was granted was sold with the consent of the life tenant, but the funds were
   not added to the trust fund.

*Held,* that the proceeds from the sale of the real estate devised for life did not
   become a part of the trust fund;

That the testator did not die intestate as to the estate in remainder after the life
   estate, nor as to the principal of the trust fund, but that both funds vested in the
   residuary legatees at the death of the testator subject to the prior estate therein.

APPEAL by the defendants, Julia Hanauer and others, from a
judgment of the Supreme Court, entered in the office of the clerk
of the county of New York on the 10th day of January, 1922,
upon the decision of the court rendered after a trial at the New
York Special Term.

The action was brought to construe the will of Abraham Bern-
heimer, deceased.

*Edgar J. Bernheimer,* for the appellants.

*Edmund Hurley,* for the plaintiff, respondent. ·

*Frank H. Sincerbeaux,* for the respondents Irving S. Bernheimer and others.

*Abraham Stern,* for the respondents Marjorie Prince and another.

*Ralph V. Wechsler,* for the respondents Addie B. Seligman and another, as executors, etc.

Judgment affirmed, with costs, on the opinion of ERLANGER, J., at Special Term.

Present — CLARKE, P. J., SMITH, MERRELL, GREENBAUM and FINCH, JJ.

The following is the opinion delivered at Special Term:

ERLANGER, J.:

At the time of the death of Abraham Bernheimer, which occurred on September 13, 1909, he left him surviving neither issue nor widow. He had, in fact, never married. Of five brothers, Leopold Bernheimer was the only one who survived him, and he died in July, 1920. There also survived him a number of nephews and nieces as well as grandnephews and grandnieces. By the first five articles of his will he bequeathed $13,000 to certain charities and to his three executors. By the 6th article he gave to Isabella Hart a life estate in the premises known as No. 322 West Fifty-eighth street, New York city, and by the same article he gave to his three executors in trust an amount which upon being securely invested would produce an estimated net annual income of $5,000, and also the proceeds of the sale of No. 322 West Fifty-eighth street if sold during her lifetime, which annuity he directed should be paid to her during her life. If the amount set aside did not realize annually that income, the deficiency in each year was to be made up out of the principal of the fund. By the 7th article he directed his executors or the survivor of them to sell upon the death of Isabella Hart or before her death, with her consent, the property devised to her for life, and upon his death to sell all the remaining real estate which he might own at that time at either public or private sale. By the 8th article he directed that all the rest, residue and remainder of his estate, of whatever nature, kind and description, which he owned or was possessed of at the time of his death, including therein the proceeds derived from the sale of real estate, should be divided as follows: Thirty thousand dollars among the children living at the time of his death and the living children of any deceased child of his brother Isaac. A like sum to the living children

and the living children of any deceased child of his brother Herman. A like sum to the wife of his brother Leopold. One thousand dollars to the living children of his brother Emanuel, and $1,000 to the issue of his deceased nephew Jacob S. Bernheimer, living at the time of the testator's death. The bequests of the two smaller sums were made to purchase some articles by which to remember the testator. No larger gifts were made to them because their financial condition was such that, happily, as the testator expressed it, they required no assistance from him. He then directed his executors to pay over all the rest, residue and remainder of his residuary estate, both real and personal, to the lawful issue of Rosetta Bernheimer and his brother Simon, such sum to be divided into as many equal and distinct parts as they might have children living at the time of his death and the lawful issue of deceased children then living (except Jacob S. Bernheimer, the son of Rosetta and Simon). The testator finally expressed the wish and desire that the amount bequeathed to the lawful issue of Rosetta and his brother Simon shall in no event be less than equal to half of his entire estate, and he, therefore, ordered and directed that in case the bequests and devises made by him, other than to the issue of Rosetta and Simon, shall together amount to more than half of his estate, then all such devises and bequests, except the devise of the life estate to Isabella Hart, shall be reduced *pro rata*, so that the total amounts of all such bequests shall not exceed half of the value of his estate. Isabella Hart survived the testator. On April 1, 1912, with her consent, the premises devised to her for life were sold, from which there was realized the sum of $34,572. That sum was invested and the income therefrom paid to her until her death, which occurred on January 30, 1921. This fund was never added to the trust fund from which the income of $5,000 was annually paid, but was always kept separate, and when she died there remained in the hands of the trustees $35,638.29, or $1,066.29 in excess of the amount realized from the sale. The trust fund at the time of her death amounted to $120,301.94. All the legacies were paid and there remains in the hands of the trustees the two funds referred to for distribution. The plaintiff, as sole surviving trustee, brought this action for the construction of the will and to ascertain the correct meaning and interpretation of the 6th and 7th paragraphs thereof, and especially whether, upon the sale of the premises made during the life of Isabella Hart with her consent, she was entitled to the income derived from the investment of the amount received on said sale. And also whether the estate in remainder or the amount received on the sale was disposed of under the will, and, finally, to whom

the trust fund which was established for the benefit of Isabella Hart to produce an annual income of $5,000 should be paid. There are two sets of claimants to both funds. On behalf of the children of Rosetta and Simon Bernheimer living at the time of the testator's death and the lawful living issue of those who predeceased the testator it is contended that both funds were bequeathed to them. On behalf of the other kin it is claimed that as to the life estate and the trust fund there was no gift over of the remainder to any designated person or class and that as to such funds the testator died intestate. It seems to me the dominant thought which animated the testator in disposing of his property and the scheme uppermost in his mind was to provide first for Isabella Hart, and next for the children and grandchildren of his deceased brother Simon. The others whom he remembered were subordinated to that general plan. Isabella Hart's interest was in no event to be subject to reduction, nor was that of the children of his brother Simon. But the other beneficiaries mentioned in the 8th article, in the event the total bequests to them exceeded one-half of his estate, were to lose so much of their share as was necessary, *pro rata*, to make up the equal half to the children of Simon. That the occasion to resort to such necessity did not arise is of no importance. That it could be done is the paramount consideration in that regard. In giving to Isabella Hart a life estate in the realty referred to the testator invested her with an absolute and indestructible interest while she lived. The house was her home several years before he died, and he resided there with her. She was not bound to occupy it. She could have leased it or otherwise disposed of it if she had so desired. (Real Prop. Law, §§ 155, 156, 247.) By the 7th article the executors were empowered to sell the property upon her death or before her death with her consent. On April 1, 1912, as indicated, a sale took place with her consent and there was realized therefrom the amount heretofore mentioned. The proceeds, however, continued to be real estate, the change was in form only. The executors, in respect of that property, did not execute a power which was imperative. At most it was discretionary while the life tenant lived, and even that discretion was subject to her consent. In these circumstances no equitable conversion was worked. (*Matter of Tatum*, 169 N. Y. 514, 518; *Scholle* v. *Scholle*, 113 id. 261, 270; *Harris* v. *Achilles*, 129 App. Div. 847, 850; *Matter of Barnes*, 110 Misc. Rep. 569; *Koezly* v. *Koezly*, 31 id. 397.) That being so, the life tenant was entitled to the income derived from the proceeds of the sale. Certain of the next of kin contend that the proceeds of the sale formed part of the trust fund. Referring again to the 6th article, we find,

after giving to his executors an amount which upon being securely invested would produce an estimated net annual income of $5,000, the following: " *And also the proceeds of the sale of Three Hundred and Twenty-two* (322) *West Fifty-eighth Street* " if sold during the life of Isabella Hart. He left it entirely to the discretion of his executors to determine what sum would be necessary for them to set aside and reserve in order to produce the said net annual income. At first blush it would seem that he intended to have the proceeds from the sale added to the fund which was to be set aside, but a more careful consideration shows that such could not have been within his contemplation. It seems utterly at variance with his primary intent. The trust was to be established and to become effective immediately upon his death. There was available property at that time to set it up. The executors were to determine the amount required to produce the estimated income. The principal was to be resorted to each year in the event the fund did not yield such income. The sale actually took place nearly three years after the testator's death. There does not appear to be the slightest reason for casting the proceeds into this fund, not even upon the theory of swelling it, so that it might never diminish in its earning power below the $5,000. Again, the property might have been sold a day, a week or a month before her death. As bearing on the testator's intention, it is only necessary to refer to the 7th subdivision of the 8th article, wherein he specifically directs that in making the deductions from the legacies therein specified he specifically excepted the life estate in the property. In my view the reference to the proceeds in connection with the trust fund is mere surplusage, and the rule should be applied that a general or primary intention should prevail over a particular or secondary one, especially where the secondary intent is inconsistent with the primary. But there is another well-established rule applicable to the situation. The devise of the life estate in the property being subject to neither condition nor restriction, but absolute, could not be diminished except by language unmistakable in its meaning and unless the intention to cut it down is clearly indicated. In *Tillman* v. *Ogren* (227 N. Y. 495, 505) the Court of Appeals, through Judge CHASE, quoting from an earlier decision of that court, said: " Where a gift is provided by will *and such gift is intended to be absolute,* a gift over is repugnant to such absolute gift and void, and the purported gift over must be treated as a mere expression of a wish or desire regarding the distribution of such part of the gift as may remain undisposed of at the death of the donee." He then goes on to say: " Where there is an absolute gift of real or personal property, in order to

qualify it or cut it down the latter part of the will should show equally clear intention to do so by use of words definite in their meaning and by expressions which must be regarded as imperative." Did the testator die intestate as to the property devised for life to Isabella Hart, now represented by the proceeds of the sale, and also in respect of the fund held by the executors in trust for her? If disposed of at all it was accomplished by means of the residuary clause. This is a broad and comprehensive clause and was intended to include everything owned and possessed by the testator at the time of his death. Just as he was solicitous about Isabella Hart, he was similarly inclined to the children of his brother Simon (except one son, Jacob). His wish and desire was that they should receive not less than half of all he left. He did not confine them solely to that portion. When he said that in no event shall they receive less than one-half, that was the minimum in his mind at the time of the factum of his will. It was argued that if it was intended that the share of the children of Simon was to include the remainder after the life estate, it was never possible to ascertain whether their share was less or more than half until the lapse of years after the death of the life beneficiary. But I think that sight was lost of the fact that the estate as it existed at the time of the testator's death is the controlling factor and the half was to be ascertained as of that time. In the construction of wills, as in the determination of questions of fact and other questions of law, it is not to be expected that absolute certainty can always be attained. In general, courts, if possible, will so construe any disputed provisions in a will as to uphold it and make it valid. (*Weeks* v. *Cornwell*, 104 N. Y. 325.) In the cited case the doubt in respect of division was greater than in the case in hand, and the will in that regard was sustained. No uncertainty was added to the bequest because of the possibility of its being reduced. Nor again was the vesting postponed until the death of Isabella Hart so that it might be ascertained whether at that time there was anything left which would pass to the designated kin. Their interest in the fund became absolutely vested at the moment the testator died, and the fact that payment was deferred until the life estate fell in added no futurity to the gift; payment only was postponed. Although no words of a gift over appear at the end of the trust, the residuary clause indicates to whom the *corpus* of the fund was intended to go. But it is strenuously urged that the provision for the issue of Rosetta and Simon represents but a residue of a circumscribed residue, and hence as to such residue the testator died intestate. The use of the words " after making the payments hereinbefore directed," and the order to his executors

instead of to his trustees "to pay over all the rest, residue and remainder of my residuary estate, both real and personal, to the lawful issue, &c.," is relied upon to support such claim. Much stress is laid on this phraseology in which real estate is included in the direction to "pay and divide." Authorities are cited in support of the claim of intestacy from the language employed, and a number are cited in opposition. There is much conflict among them. In *Carter* v. *Board of Education* (144 N. Y. 621, 624) Judge GRAY said: "While the words ' after the payment of the foregoing bequests' in the residuary clause might, in some cases, be deemed to circumscribe and confine the residue, so that a residuary legatee would not be entitled to any benefit accruing from lapses, that effect would be given to them because they would illustrate an intention which was apparent from the will. Judge EARL's observations in *Matter of Accounting of Benson* (96 N. Y. 499) are to be taken, not as laying down an absolute rule that a residuary clause is necessarily circumscribed by the insertion of such words, but as suggesting that they might evidence an intention on the part of the testator that the residue is to be confined to so much only as would remain after deducting from the estate the aggregate amount of all previous bequests. Such an intention, however, we think, the rest of the will must fairly warrant in order to override the general rule." To the same effect see *Riker* v. *Cornwell* (113 N. Y. 115) and *Lamb* v. *Lamb* (131 id. 227). In *Langley* v. *Westchester Trust Co.* (180 N. Y. 326, 332), speaking of the rule to be applied to a bequest of a "residue of a residue," it was said that "the later cases have given the matter more careful consideration, and if the *Kerr* case* is in conflict upon this point it must be deemed to have been overruled." The "pay and divide rule" is also adversely commented upon in *Cammann* v. *Bailey* (210 N. Y. 19, 33). The 7th clause, which conferred upon the executors the power to sell all the real property upon the testator's death, was an imperative power, and such property was deemed converted as of the date of his death. (*Underwood* v. *Curtis*, 127 N. Y. 523, 533; *Matter of Hammond*, 74 App. Div. 547, 550.) In the case of the devise of the life estate to Isabella Hart, had she not consented to a sale, the direction to the executors to sell upon her death was likewise imperative. There is no inconsistency in treating the proceeds of that sale as real estate while she lived and as personalty upon her death when to do so is to effectuate the testator's intent. There was no real estate as such to divide, and so the direction to the executors instead of to the trustees in respect of the trust fund

---

* *Kerr* v. *Dougherty* (79 N. Y. 327).— [REP.

cannot aid the contesting kin. While there is a distinction between them with regard to rights and duties which the law recognizes, nevertheless when persons are named as executors and are given the management of a trust they may act in both capacities at the same time. (*Townsend* v. *Winburn*, 107 Misc. Rep. 443, 452.) It is claimed that there was derived from the trust fund an income beyond the $5,000. The plaintiff testified that the income from both funds exceeded that amount and that in some years the trust fund yielded an income in excess of the annuity. It was kept and used in the years when there was a deficiency. The court is asked to declare that whatever the excess was it was an unlawful accumulation and that the testator died intestate as to it. There can be no doubt that the accumulation, whatever it may be found to be, was not authorized under our statutes. But as the principal was bequeathed under the residuary clause to the persons therein designated the income passed to them as the persons entitled to the next eventual estate. (*Matter of Beacom*, 109 Misc. Rep. 469.) Finally, the claim that the testator died intestate as to both funds, in order that such of the kin " who fared less handsomely by the express provisions of the will " might have their shares increased is, I think, beside the question. In such event the children of his brother Emanuel and the issue of his deceased nephew, to whom $1,000 was bequeathed to purchase some gift in remembrance of him, would have their shares increased, although the testator limited his bequests to them because their financial condition was such as not to require " any money as a legacy " from him. My conclusion is that the residuary clause carried both funds to the persons described therein; that the testator did not die intestate as to any of his property; that the income of the Fifty-eighth street property was properly paid to Isabella Hart during her life and whatever was earned up to her death and not paid to her passed under her will; that the trust fund, so called, as well as the proceeds of the Fifty-eighth street property, was bequeathed to the issue of Rosetta and his brother Simon living at the time of the testator's death and children of deceased children then living, excluding the children of Jacob Bernheimer, a deceased son of Rosetta and Simon; that Lorin S. Bernheimer, having survived the testator, is entitled to his share of said property, his interest, with the others, having vested at the time of the testator's death. The minutes show that at the close of the trial one of the parties requested that the court direct the executors to file an account so that exceptions may, if deemed necessary, be filed thereto. If that is desirable it will be so ordered. Submit findings and decree on two days' notice within five days.