In the Matter of the Estate of RAFFAELE GARGIULO, Deceased.

Surrogate's Court, Kings County, October 7, 1930.

*Carlo D. Cella,* for the administratrix c. t. a. and substituted trustee.

*Frederick H. Koschwitz* [*Wilber W. Chambers, William West Shaw* and *Sarah Williamson* of counsel], for the objectants.

WINGATE, S. The unfortunate, even tragic, consequences of ineptness in testamentary directions are well illustrated in the case at bar. The turgidity of expression in the will of the present testator has caused an estrangement, substantially amounting to a feud, between members of his immediate family. This has not only resulted in evident ill-feeling, but has been a fruitful source of litigation for almost a generation.

Testator was survived by four children by a first marriage, two by the second, and by the second wife, who is the accountant herein.

At the time of his death on November 4, 1912, he was engaged in the wholesale fruit and commission business at 282 Washington street, Manhattan. His eldest son, Silvio, then twenty years of age, was employed in this business, and the second son, Dante, who at his father's death was fourteen, apparently spent some time there during his school vacations in the summer..

It is evident that testator's savings were almost entirely invested in real estate, since, so far as discernible from the record, the only substantial assets of the estate consisted of the family residence at 2339 Benson avenue, Brooklyn, the property where the business was conducted at 282 Washington street, Manhattan, another property at 294 Washington street, a seventeen-thirtieths interest in 109–117 West Houston street and two unimproved lots at Garfield, N. J. Most of these properties were heavily incumbered.

The executor and trustee named in the will duly qualified. After administering the estate for a year and a half, he apparently sensed the unpleasantness which was developing between the members of the family respecting the proper construction of the will and resigned. In his stead the widow was appointed trustee of the general trusts created by the will, while the eldest son, Silvio, who had become of age, qualified as trustee of the business.

The provisions of the will indicate testator's expectation and desire that his two sons, Silvio and Dante, should follow in his footsteps in the conduct of the business. The 2d item thereof, so far as material, provided that all personal property connected with testator's business conducted at 282 Washington street should pass to his trustee in trust for Silvio and Dante and that such business should be conducted by the trustee for their sole use until both reached majority, when " the said business, together with the credits, accounts and increases and money belonging to same, shall become their absolute property  *  *  *."

During his brief tenure as trustee, Noecker conducted the business in his fiduciary capacity, and after his retirement, and the sub-

stitution of Silvio, the latter continued its prosecution until Dante became of age.

Standing alone, the foregoing testamentary direction could not reasonably have given rise to differences of opinion as to its proper interpretation, but the succeeding item unquestionably involved the matter in some ambiguity.

This item, while vital in the determination of the questions here presented, need not be stated in full as its wording may be found in the former opinion in this case. (*Matter of Gargiulo*, 134 Misc. 182, 183, 184.) Suffice it to note that all testator's realty was given to the trustee in trust for testator's seven named children, to divide into equal shares and apply the profits for their maintenance, with power to invade principal, to pay to the widow such share as she was legally entitled to receive; and on the youngest child attaining majority to divide the principal equally among the children then living. In subparagraph " e " of this item, general powers were granted the trustee to manage, sell, lease and do any other necessary acts in connection with the realty " except that hereinafter specifically excepted." This exception was expressed in the following language: " except the property No. 282 in Washington Street * * * which must not be sold or leased until the youngest child attains the age of twenty-one years, it being my desire that the property No. 282 Washington Street shall be kept in the possession of my two sons Silvio Gargiulo and Dante Gargiulo, who shall continue the business as aforesaid up to the time all the real property shall be divided as herein provided, and the property used as a home situated in Brooklyn, which will be used as the home of my children, and wife during her widowhood only."

Unless this item " III " is properly construable as such, the will contained no residuary clause.

The chief difference which arose as to the construction of these items of the will, concerned the rights of the general estate on the one hand, and Silvio and Dante on the other, in respect to the premises 282 Washington street, this centering upon whether they were under obligation to make payment for the occupation of the premises in the conduct of the business.

The questions here involved were partially decided by this court in a former proceeding affecting these items of the will (*Matter of Gargiulo*, 134 Misc. 182), to which all persons now before the court were parties; and in view of the fact that although an appeal from that decision was taken, it was subsequently abandoned, the construction therein reached, is, so far as applicable, the law of the case and binding upon all parties. (*Matter of City of New York*,

230 App. Div. 52, 55; *Barber* v. *Rowe,* 200 id. 290, 294, 295, and cases cited.)

The conduct of the parties respecting the rights of Silvio and Dante in 282 Washington street is illuminating, and, in the opinion of the court, decisive of the questions in dispute. During the lifetime of the testator, he paid to himself, individually, a regular rental as an expense of the business, for the occupation of the premises, and this practice was continued by Noecker, and after his resignation, and the substitution of Silvio as trustee, by the latter. This rental was paid both by Noecker and Silvio, as trustees of the business, to the general trustee of the estate. As Noecker acted in both capacities, his payments were made to himself, but Silvio actually paid the accountant herein.

In or about 1916 the fruit business became very bad and Silvio fell behind in his rent. It was then mutually agreed between him and the accountant that the property should be rented to C. V. Smith & Co., and this was done, both parties signing the lease. In connection with this arrangement, a formal agreement was entered into in January, 1917, between the accountant and Silvio, which provided that the net rentals received from the Smith lease should be deposited in an account to their joint credit which " shall be disposed of later in accordance with a mutual agreement to be made between the parties."

Dante, the younger brother, attained his majority in August, 1919. The record is barren of any showing that subsequent to testator's death he ever took any active part in the business. At the time of his father's death he was attending school in Brooklyn. From there he went to Manhattan College and on his graduation matriculated in the University of Pennsylvania Dental School. In January, 1920, he was still pursuing his studies in the latter institution. The fruit business under Silvio's management had continued unprosperous and Silvio wished to go into partnership in the same line with some individuals by the name of Amendola. In this situation the trustee and he consulted counsel and it was arranged that the former should execute a lease of the Washington street premises to the new firm and that the long-continued controversy between them respecting the rights in this property should be terminated. In pursuance of this arrangement an agreement was entered into in January, 1920, and executed by the widow, individually and as trustee, and by Silvio and Dante, by which the two last named parties consented to the execution by the widow as trustee of a lease to the new firm of 282 Washington street. This agreement further recited that Dante and Silvio, individually and as trustee " do hereby waive any and all claims of any nature what-

soever * * * for the repayment of any sum or sums heretofore paid or allowed or hereafter to be paid or allowed as rental or as occupation money for the said premises # 282 Washington Street, and for any and all sums heretofore paid and hereafter to be paid as rental or occupation money for the said premises." It further provided that the rental moneys theretofore deposited in joint account pursuant to the agreement of January, 1917, should be paid over to the widow as general trustee, and concluded with the statement that Silvio and Dante " do hereby waive their rights, if any, to retain possession of the said premises #282 Washington Street (except such rights as Silvio Gargiulo may have as a member of the firm of P. Gargiulo & Brother and L. Amendola & Company, under the lease this day executed affecting said premises)."

As a part of this general transaction, Dante duly assigned all his interest in the business to Silvio, the latter in turn agreeing to indemnify him in respect thereto and to pay him a certain portion of any net profits of the new firm for a specific period.

By an independent document Silvio and Dante authorized the widow as trustee to enter into the new lease on behalf of the estate. This lease was duly executed and was signed by the widow as administratrix c. t. a. and substituted trustee, as lessor, and by Luigi Amendola, Nicola Amendola, Andrea Amendola and Silvio Gargiulo as lessees. This lease expired on April 30, 1923, and the rental reserved therein was duly paid to the accountant. At its expiration a new lease for a three-year term was executed by the widow as administratrix and trustee, as lessor, and Silvio Gargiulo, alone, as lessee, the rental on which was $600 per month. Silvio duly paid the rent during the entire term of this lease. At its expiration, no new lease was executed, but Silvio continued in possession until the premises were sold on May 20, 1929. He continued to pay rent until January 1, 1927, but refused to make payment of any rent which accrued subsequent to that date, and one of the questions here submitted is his liability for such later rent.

Silvio and Dante as the objectors in this proceeding, while not seriously minimizing the apparent effect of these instruments, contend that their execution was obtained by misrepresentation and and fraud that they were without consideration. Their testimony in attempted substantiation of this position was unsatisfactory to a degree. While insisting that he was unrepresented by counsel and was induced to sign by the attorney for the estate, Silvio admitted under questioning by the court that he had employed the same attorney about the same time in his own affairs and had subsequently taken a " lot of business " to him. This attorney was

later examined in connection with the transaction and his testimony was refreshingly straightforward and convincing as compared with the equivocation and evasiveness of the brothers. The evidence adduced from him was to the effect that the entire adjustment was reached. as a result of full and free discussion between the parties, that all matters were fully and correctly explained to them and that they fully understood what they were doing, to the end " that all these matters with reference to the rental of 282 Washington Street should now come to an end " (S. M. p. 114) and that the parties should " cut out the squabbling " (S. M. p. 119).

As the trier of the facts, the court determines from the demeanor and manner of testifying of the opposing witnesses, as well as from the content of their testimony, that there is no basis whatsoever for the contention that the two brothers did not fully understand what they were doing or were induced thereto by any improper representation or fraud.

The contention that the documents were invalid as being without consideration is entirely without legal justification. The transaction was an entirety. Mutual conflicting claims were settled thereby and this cleared the way for and resulted in the execution of a lease of the premises to the new Amendola partnership, of which Silvio was a member, which course was so earnestly desired by Silvio in the hope that it might salvage his waning fortunes. The further effect of the adjustment was to relieve Dante from possible responsibility for the debts of the concern, which result he particularly wished, and assured him of a participation in any profits which might be made, without effort on his part, or interference with the different life occupation which he had chosen for himself.

The legal result of this adjustment was a construction by consent of all interested parties of subsection " e " of item III of the will with like effect as if the pertinent portion of that provision had originally been drawn to read that 282 Washington street should not be " leased without the consent of my sons until the youngest child attains the age of twenty-one years," etc.

That this was, in substance, what the testator originally intended cannot be seriously doubted in view of all of the evidence in the record, the earlier practical construction of the parties, the fact that the testator paid rent to himself for the use and occupation of the premises while he conducted the business there, and the further fact that at the time of the death and immediately subsequent thereto, the estate would have shown an actual annual deficit if no income were to come to it from the Washington street property.

By the direct agreement of the parties all rentals actually paid

became a part of the general assets of the estate and consequently the only remaining question in this regard concerns the rental accruing since January 1, 1927.

At the time this will was previously construed this court said (134 Misc. 182, at p. 185): "We * * * find an express devise by the testator of all his property to the trustee. This obviously vested legal title in the trustee."

Again at page 186: " The obvious inference from these additional words is that whereas the [Washington street] property is not to be sold prior to such time [i. e., before the youngest child reaches majority], it may be sold thereafter, which, in turn, leads to the obvious inference that the testator had no intention that the trust and consequently the powers given the trustees should then terminate, but that they should continue beyond the time of such majority and until the other expressed objects were attained."

For the reasons noted this statement is now the law of the case. Even in the absence of this fact, it seems apparent that the result must be the same, since the grant of the general power to lease with the limitation (removed by the consent of the interested parties) that 282 Washington street " must not be sold or leased until the youngest child attains the age of twenty-one years " carries with it the implied authorization of such rental subsequent to that time, if all of testator's words are to be given effect, which should be done, if possible. (*Fleischman* v. *Furgueson*, 223 N. Y. 235, 239.) The youngest child reached majority on October 14, 1927.

By holding over after the expiration of the lease of April 30, 1923, Silvio became a tenant from year to year, holding under the conditions of the preceding lease, except as to duration (*Kennedy* v. *City of New York*, 196 N. Y. 19, 23; *Schuyler* v. *Smith*, 51 id. 309, 313; *Stewart* v. *Briggs*, 147 App. Div. 386, 387; *Stern & Co.* v. *Avedon & Co., Inc.*, 194 id. 433, 435; affd., 231 N. Y. 546), and is, therefore, liable to the estate for rental at the rate reserved by the lease up to the time he vacated the property.

Since, under the law of the case, the trust continued subsequent to the time the youngest child attained majority, the trustee's obligations respecting management of the trust property necessarily continued. It was, therefore, her duty to see that the property was profitably employed and to enforce all rights possessed by the trust estate in connection with such employment.

The sole remaining question presented for determination at this time concerns the rights of the widow under subsection " c " of item " III " of the will, which reads: " My said Trustee shall pay to my wife Ulrica Gargiulo such a share or income out of the real property as she is entitled by law to receive and no more."

It is the contention of the accountant that the provisions of the will effected an equitable conversion of the realty and that consequently the widow became entitled under the foregoing provision to absolute ownership of one-third of the estate, while the objectants maintain the reverse, and would limit the widow to her dower rights.

The question of whether or not the terms of a particular will shall be construed as effecting an equitable conversion of real estate into personalty depends upon the intention of the testator as deduced from the entire instrument. If a sale is directed, conversion will be held contemplated, but where a power of sale is discretionary the determining test is as to whether its exercise is essential to the effecting of the testator's purposes. Thus the Court of Appeals says in *Matter of Tatum* (169 N. Y. 514, at p. 517): " The power of sale, which was given   *   *   *   was discretionary, by its terms, and for that reason cannot be considered as, of itself, effecting an equitable conversion of the real estate. It is argued, however, that the intention that there should be a sale of the real estate, and that its conversion into personalty should be effected, is to be implied from the general provisions of the will and, particularly, from the residuary clause.

" In order that a court shall be justified, in so construing the will of a decedent as to effect a change in the apparent character of his estate, and in treating that as personal property which is real estate, in regulating its final distribution, the equivalent of such direction should be found in the general scheme of the will; when the only power given to sell the real estate is discretionary. Unless the purpose of the testator will fail without a conversion, equity will not presume it. There should be an implication of a direction to convert, so unequivocal and so strong as to leave no substantial doubt in the mind.   *   *   *   Indeed, conversion, to be decreed, must be so necessary, as that, without it, the provisions of the will would be rendered unreasonable and incapable of a just and an effective operation."

To like effect see *Matter of Seymour* (209 App. Div. 655, 658; affd., as to this point, 239 N. Y. 259, 264); *Thompson* v. *Hart* (58 App. Div. 439, 448; affd., 169 N. Y. 571); *Harris* v. *Achilles* (129 App. Div. 847, 850).

Since the inquiry in this as in all other branches of testamentary construction is as to what the testator, himself, intended, which, except in cases of latent ambiguity, is to be determined only from the four corners of the will (*Matter of Rossiter*, 134 Misc. 837, 839, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Gorra*, 135 Misc. 93, 95; *Matter of Storey*, 134 id. 791, 797; *Matter of Quinby*,

Id. 296, 299; *Matter of Farkouh,* Id. 285, 287; *Matter of Gurlitz,* Id. 160, 162), the only important consideration is what the will itself says or necessarily implies and this will not be affected by subsequent occurrences. (*Olcott* v. *Estate of Hoffman, Inc.,* 127 Misc. 399; affd., 220 App. Div. 713.)

Applying these principles to the will at bar, it is obvious that the power of sale given by item " III-e " is purely discretionary and that there is nothing in subsection " d " incompatible with an intention that the property comprising the principal might, subject to the succeeding discretionary power of sale of the trustee, be conveyed to the ultimate beneficiaries in specie. It must follow, therefore, that there is no equitable conversion of the realty into personalty. As a further result, the rights of the widow referred to in item " III-c " are substantially equivalent in extent to the dower rights which she would have received in case she had elected to take against the will. (*Matter of Gorden,* 172 N. Y. 25, 30.) There is, however, a distinction to be noted in this regard, that while the widow's participation in the estate is measured by her dower rights, the share which is to be determined in this manner is given her by the express terms of the will. In this respect, this testamentary direction resembles that recently examined by this court in *Matter of Ackerman* (137 Misc. 910), where the testator directed the distribution of a trust remainder in accordance with the provisions of the Statute of Distribution. In determining the widow's rights, we read in section 190 of the Real Property Law that " A widow shall be endowed of the third part of all the lands whereof her husband was seized of an estate of inheritance, at any time during the marriage." The measure of such rights is clearly demonstrated in article 14 of the Real Property Law, which, while added to that law only in 1920 (Laws of 1920, chap. 930), is merely a re-enactment of former sections of the Code of Civil Procedure. It is determinable from this article that the dower rights of the widow are a life interest (§ 476) in one-third of decedent's real estate (§ 472, subd. 1), less a deduction for any permanent improvements made subsequent to the death of the husband of the dowager (§ 472, subd. 2). The intent is clearly apparent in these provisions that the widow shall, where practicable, actually receive physical possession for her life of one-third of the decedent's realty. It must follow from this fact that any enhancement in the value of such assigned property would beneficially accrue to the widow during her life, which, when taken in conjunction with the fact that the action for dower may be brought at any time within twenty years after the death (§ 460), effectually disposes of the contention of the objectors that the limit of the widow's participation is

measured by the value of the real property at the time of the decease.

The misapprehension of the objectors arises from their failure to comprehend that the widow's rights in this proceeding arise from the will itself, the benefits under which she has elected to accept by reason of her failure to evince a contrary choice within the time provided in section 201 of the Real Property Law. Whereas her rights are measured by the statute as a result of the express direction of the testator, they arise not from the statute, but from the will.

It must follow from the foregoing that up to the time of the sale of the real property belonging to the estate, the widow was beneficially entitled to an undivided one-third life interest in all of the real property in the estate and in the capacity of beneficial owner of such interest was entitled to receive one-third of the net income derived therefrom in the condition in which it existed at the time of the death. Her rights were, however, only in such undivided one-third interest, in the same plight as that in which it passed from the decedent, both as to physical condition and incumbrances, and she cannot benefit by reason of money expended by her cotenants to which she did not contribute, either for permanent improvements or in reduction or satisfaction of incumbrances.

Upon the sale of the property, her rights were transferred to and became impressed as a lien upon the total proceeds received, in like manner as if a particular parcel of property had been assigned to her in satisfaction of her dower rights and had subsequently been sold.

No application has been made for a determination of the present value of this life interest of the widow and it is, therefore, to be presumed that the parties will either adjust the matter between themselves or that a sum is to be set aside from the sale of the properties representing the widow's interest therein and that she will receive the life benefits therefrom.

The foregoing disposes of all questions submitted at this time. It is possible that the parties may be able to agree upon the concrete application of the principles hereby decided; but, if not, the proceeding may be brought on for further hearing.

Proceed accordingly.