In the Matter of the Estate of WILLIAM H. LOOMIS, Deceased.

Surrogate's Court, Kings County, November 11, 1933.

*Wingate & Cullen* [*James S. Price* of counsel], for the petitioner.

*Thomas M. Day,* for the Loomis Institute.

*Frank E. Davis,* for Blanche Schmidt.

*Isidor Newirth,* special guardian.

WINGATE, S. The only general legal principles applicable in the determination of the question herein presented are those time-honored touchstones of testamentary interpretation, that the intent of the testator, in so far as ascertainable, and not contrary to law, shall be effectuated (*Matter of Bell,* 141 Misc. 720, 721; *Matter of Blake,* 146 id. 780, 784; *Matter of Walsh,* 147 id. 281, 283; *Matter*

*of Holmes,* Id. 394, 398; *Matter of Burling,* 148 id. 835, 838), and that such intention is to be ascertained from a reading of the will in its entirety. (*Matter of Gargiulo,* 138 Misc. 90, 98; *Matter of Leonard,* 143 id. 172, 184; *Matter of Grauer,* 146 id. 469, 471; *Matter of Gavey,* 147 id. 332, 335; *Matter of Cronin,* Id. 611, 612.)

The testator died on June 7, 1913, his gross estate amounting to slightly less than half a million dollars. His will is a somewhat unusual document, providing for specific gifts to seventy-one named individuals, as well as bequeathing the residue to an institution in Connecticut. Fifty-six of these specific gifts are contained in various subparagraphs of the third item of the will, the main portion of this item, introductory to the particular gifts, which were each in numbered subparagraphs, reading: " I give and bequeath the following legacies to the several persons and institutions hereinafter named, or to such of them as may be living or in existence at the time of my decease; if any of the persons hereinafter named should not be living at the time of my decease, unless otherwise specified herein, the bequest given to such deceased person or persons shall go to and form a part of my residuary estate, and be disposed of as is hereinafter provided and directed in paragraph Seventh of this will."

The fifty-six succeeding numbered subparagraphs give benefits to as many different persons and corporations, some in the form of trusts and some outright, some of identified stocks, others in cash and many of them also of specified articles of testator's personal belongings. As demonstrating the very unusual method of testamentary disposition employed, it may be noted in passing that the decedent apparently made specific gifts of practically every article of his personal belongings which possessed any substantial value either intrinsic or sentimental, including a large number of specified paintings, also vases, cut glass bottles, a bronze statuette, hat rack, gun and gun case, piano, field glasses, pieces of pottery, typewriter, personal clothing, canes, umbrellas, trunks, bags, fishing tackle, household furniture, specified sets of books, and books as a class, dishes, curtains, draperies, dictionary, bible, watch and chain, photographs, automobile and appurtenances, symphony organ and music rolls, certificate of membership in a specified society, etc.

The first six subparagraphs give certain items of corporate stock in trust for named life tenants, the remainder being payable to their heirs. Subparagraphs 7 to 21, inclusive, made outright gifts to named legatees. The 22d subparagraph gave certain shares of stock in trust for the life of decedent's physician with a provision for " the principal of said bequest to fall into and

become a part of my residuary estate upon the decease of the said beneficiary."

The 23d subparagraph erected a similar trust for the life of the decedent's dentist, with a like remainder provision in favor of the residuary legatee.

The following subparagraph, numbered 24, is the subject-matter of the present construction proceeding, and reads as follows:

" 24. To my faithful and trusted housekeeper, Mrs. Marie Katherine Collings, of Brooklyn, New York, the use of my house and lot, No. 168 Prospect Place, Brooklyn, New York, for life; also, the income of Fifty Shares of the Preferred Stock of the Atchison, Topeka and Santa Fe Railway Company for life; also, all my household furniture, books, dishes, curtains, and draperies not otherwise specifically given or bequeathed, for and during the period of her natural life, and after her decease the said house and lot and the personal property hereby devised and bequeathed shall be divided among her children living at the time of her decease, share and share alike, provided, however, that the said Mrs. Marie Katherine Collings, the said beneficiary is my housekeeper at the time of my decease; if not, the said bequest to fall into and become a part of my residuary estate."

The 25th to 54th subparagraphs, inclusive, gave outright legacies. The 55th erected a trust for the life of decedent's secretary with a direction similar to those in the 22d and 23d subparagraphs, providing that the remainder after the death of the life tenant should be payable to the residuary legatee. The 56th paragraph again gave outright gifts.

The fourth item of the will gave legacies of $500 each to fifteen named individuals, and the succeeding item made the Loomis Institute of Windsor, Conn., residuary legatee, the phraseology in this respect presenting nothing of an unusual nature.

The particular problem presented in respect to the 24th subparagraph of the third item relates to the disposition of the fifty shares of preferred stock of the Atchison, Topeka and Santa Fe Railway Company, the life use of which was given to Mrs. Collings, testator's housekeeper. For some reason which does not seem entirely apparent at the moment, the gift in this regard has been treated as a trust, the possession of the specified shares being retained by the general trustee under the will, and the income thereof only, paid over to Mrs. Collings. She has now died and the question is presented as to whether this particular item in the gift should go to her children under the alternative phraseology of this paragraph, or should pass to the residuary legatee under item fifth of the will.

The residuary legatee lays no claim to the house or to the articles of household furniture, etc., given by this paragraph, conceding that they have become the property of the remaindermen mentioned in the subparagraph itself. It contends, however, that all that was given to Mrs. Collings in respect to the stock was the income thereof, that this could not pass to the named remaindermen since such act would effectuate a trust for their benefit and violate the Statute of Perpetuities. The final thesis of the residuary legatee is that the words " personal property " in the clause reading: " after her decease the said house and lot and the personal property hereby devised and bequeathed shall be divided among her children," relates merely to the specified tangible property enumerated, and does not include the stock itself.

In attempted legal substantiation of this position it cites such cases as *Matter of Reynolds* (124 N. Y. 388, 395), which apply the rule of *ejusdem generis* to enumerations of personal property in a general gift thereof. These cases are, however, not at all applicable to the language of the will at bar. This principle has been applied only in cases where the gift consisted of a specified enumeration of personal property usually located in a certain place. The particular holding in *Matter of Reynolds* is typical, and concerned a gift of the personal property located in a specified building, the testamentary language continuing: " including all the furniture and personal property in and upon the same, or in any manner connected therewith." The determination of the court was that this specific enumeration identified the nature of the property which the testator had in mind, and by application of the principle of *ejusdem generis,* personal property of an entirely different nature, such as bank books, would not pass under the language of the gift.

In the case at bar, however, the language employed is entirely different. The donative words in respect to the stock on the one hand, and to the specified items of household furnishings on the other, are entirely separated, and the directions are contained in different clauses of the subparagraph.

The testator specified that after the decease of the holder of the life estate " the personal property " should be divided among her children. It requires scant citation of authority to demonstate that " personal property " includes stock, since, not only is this obvious on its face, but it has been so determined on innumerable occasions: indeed, the second reported case of the Court of Appeals (*Stief* v. *Hart,* 1 N. Y. 20) so holds, the court saying (at p. 24): " They [the words ' personal property '] embrace not only goods, chattels, coin, bills and evidences of debt, but in their strict

and more appropriate legal definition signify the right and interest of the owner or owners in these articles." (See, also, Gen. Constr. Law, § 39.)

The will as a whole exhibits a somewhat unusual sensitiveness on the part of the testator to the claims upon his bounty of even remote individuals and a still more uncommon particularization of the precise extent and nature of the benefit which he wished each to receive. Beyond this, however, the diversity of the nature of the benefits conferred makes it certain that he knew how to express his will in apt and intelligible language. Where he desired any intended gift to fall into the residue upon the happening of a certain contingency, he said so in unmistakable terms. This appears expressly from the introductory paragraph of item third of the will and is further particularly emphasized by the gifts over, following the particular life estates in the 22d, 23d and 55th subparagraphs and, indeed, by this 24th subparagraph itself.

Unquestionably, as contended by the residuary legatee, he was anxious to leave a substantial part of his estate to it, but that the gifts preceding the residuary bequest did not impair this desire, is obvious from the fact that on the executorial accounting assets aggregating approximately $300,000 in value were paid over to it.

Returning to the language used in subparagraph 24, it is obvious in respect to all three of the items of property given, that all that the testator contemplated was the life use of the particular subject-matter of the gift by Mrs. Collings. The " use " of the house and lot were given her " for life." The household furniture was given her " for and during the period of her natural life." Likewise she was given "for life" the income of the specified stock. It is, of course, primary that aside from the right of disposition by sale, incumbrance or otherwise, the only property right which a stockholder possesses in corporate stock is the right to receive its income (*Matter of Jones*, 172 N. Y. 575, 582), and it seems entirely apparent to the court that the manner of expressing the nature of the gift of the stock was intended, in respect to Mrs. Collings, to effectuate the same sort of a gift which was made in regard to the other items particularly specified in this subparagraph, namely, a use thereof for life. She became a life tenant of all three and the remainder of all three, after her life use thereof, passed in equal shares to those of her children who were living at the time of her decease in accordance with the express language of the testator.

Proceed accordingly.