J. Kenneth Servé, S.
The executrices have filed their account and the special guardian has objected to several parts thereof. The main objection is that the executrices have delivered to themselves, as residuary legatees, part of the household goods, which have an inventory value of $1,980. He claims that such personal property should have been sold, and the proceeds used to pay administration expenses.
*1032 At the time of the decedent’s death, her assets were composed of real and personal property. The real property was a farm, which had an appraised value of $11,000. The personal property consisted of two bank accounts (Staten Island Bank and Marine Trust Company of Western New York, Holley, New York Office), in the aggregate amount of $997.62, and household furnishings, which have an inventory value of $2,240.
The testatrix, in the first clause of her will, directed that ‘ ‘ all my just debts and funeral expenses be paid.” In the second clause of the will, she provided that the money in her account in the Staten Island Bank was to be used toward the defrayment of the cost of her funeral, and the money in the Holley Bank was to be used to put her family cemetery lot in proper condition.
With the exception of three acres of land and the house and farm buildings situate thereon, the testatrix, by the third clause of her will, specifically devised her farm. The afore-mentioned three acres of land and the buildings were directed by the testatrix to be sold, and from the proceeds of the sale the executrices were directed ‘ ‘ first to pay such debts of my estate as there may be, and after payment of such debts, I direct that the remainder of the proceeds of such sale be divided into fifteen equal parts. ’ ’ The 15 shares were specifically bequeathed.
Several articles of household furnishings were specifically bequeathed, and the balance of such furnishings became part of the residue of the estate.
The executrices oppose the contention of the special guardian and urge that the administration expenses should be paid out of the proceeds derived from the sale of the real estate, as such expenses should be included in the language ‘ ‘ debts of my estate ”.
In the usual and ordinary sense when debts are spoken of in estate proceedings, the term refers to obligations incurred by the decedent in his lifetime. The expenses incurred in the settlement of the estate are usually classified as administration expenses. The provisions of the Surrogate’s Court Act make a distinction between debts and administration expenses. On numerous occasions, the courts, in determining the priority of payment, have made clear the difference between debts and administration expenses. However, despite the statutory and judicial distinction between the terms debts and administration expenses, the question in this ease is what meaning did the testatrix ascribe to the words “ debts of my estate ”. Was she using the term debts in its strict legal sense, or did she intend to encompass all obligations owing by her estate, whether the *1033 same were incurred prior to or subsequent to death ? To answer the question, it will be necessary to. construe the will of the testatrix.
In a will construction, it has been rig’htly said that precedents are of little or no value because ‘ ‘ no will has a twin brother ’ ’. The efforts of the court in will construction proceedings should always be directed toward the discovery of the intent of the testator as it is expressed in the will. The intent must be determined by what was apparently or presumably in the testator’s mind when he made the will. (Matter of Hoffman, 201 N. Y. 247; Matter of Barrett, 141 Misc. 637.) Such intent should be sought in the language of the entire will, and not merely in the clause or phrase to be construed. (Matter of Loomis, 149 Misc. 417.) When such intent is ascertained and it is adequately expressed in the language of the will, it is to be carried out unless contrary to public policy or law. In the event the language is ambiguous, vague, or unclear, then the canons or rules of construction are to be resorted to in determining the intent of the testator at the time he made the will.
In analyzing the language of the will of this testatrix, it is evident that she has concentrated her attention upon providing for funeral expenses, cemetery lot improvement, and payment of debts. She designated a fund to be used toward the payment of her funeral expenses (Staten Island Bank account), and the conditioning of the family cemetery lot (Holley Bank account). The estate tax deposition filed in this estate discloses that the afore-mentioned bank accounts were the only accounts and money that the testatrix had at the time of death, which occurred within one month of the execution of her will. The estate tax deposition stated that the amount of the Staten Island Bank account was $532.01, and the Holley Bank account was listed in the deposition as $465.61. In her will the testatrix estimated the Staten Island Bank account to be about $500, and the Holley Bank account to be about $100.
By directing the manner in which the Staten Island Bank account and the Holley Bank account were to be expended, the testatrix thought that she had effectively disposed of all the cash that she had at the time of her death. It is reasonable to assume that the testatrix thought the Staten Island Bank account to be insufficient to pay her funeral expenses in full, because she directed the executrices to use such funds ‘1 towards my funeral bill ”. She must have known that the balance would have to be paid from her estate assets. It is also reasonable to assume that she knew that the expenses of settling her estate *1034 affairs and paying the remaining debts would have to be paid from estate assets. Knowing that she had disposed of all her cash, and there did remain obligations or balances thereof to be paid, the testatrix made definite provisions for payment of the same.
In the paragraph designated fourth of her will, after devising part of her farm, she mandated her executrices to sell the balance of her farm, including the farm buildings, and to first pay from the proceeds of the sale the “ debts of her estate ”. The testamentary scheme is clear in that the testatrix was preoccupied with the idea of definitely designating and providing funds for the payment of all obligations of her estate. At the beginning of her will, she directed the payment of “my just debts ”, and then she became specific and created a fund by ordering the sale of part of her real estate for the payment of ‘ ‘ debts of my estate ’ ’. If she were only concerned with the debts which she incurred in her lifetime, it would have been unnecessary for her to change the phraseology from “my debts ” to “ debts of my estate ”. It is not without significance that, in creating the fund out of the proceeds derived from the sale of part of her real estate for payment of debts, she, for the first time, changed her language in referring to debts from ‘ ‘ my debts ” to “ debts of my estate ’ ’. Such language clearly enlarged the category of debts.
To say the words “ my debts ” and “ debts of my estate ” are synonymous would be a strained interpretation. It would not give effect to all the words used by the testatrix in her will. Courts should give effect to every word and provision of the will insofar as they may, without violating the intent of the testatrix or well-settled rules of law. (Eidt v. Eidt, 203 N. Y. 325, 330.)
The obvious intent disclosed by the descriptive term “ debts of my estate ’ ’ should not be disregarded and neither should it be frustrated by limiting its meaning to the debts incurred by the testatrix in her lifetime. To sanction such a restrictive meaning by judicial interpretation would require the court to close its eyes to the particular words employed by the testatrix when she referred to debts in the paragraph designated fourth of her will, and proper recognition would not be given to the difference in terminology employed by the testatrix when she referred to debts. “ Words are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant. (Matter of Buechner, 226 N. Y. 440, 443.)
*1035 The imperative direction to sell and pay the debts of the estate from the proceeds of the sale does not involve the point of charging debts on real estate and exonerating the personal property. The mandatory directive to sell the real property, referred to in paragraph designated fourth in the will, and to pay the debts of the estate from the proceeds, and then the specific bequest of the remainder of the proceeds, worked an equitable conversion of such real property for those purposes. To effectuate the provisions expressed in paragraph designated fourth, the real property became in law personalty. (Hatch v. Bassett, 52 N. Y. 359.)
This court does determine and construe that part of the language of the will as set forth in paragraph designated fourth, which directs payment of “ debts of my estate ” from the proceeds of the sale of the real property, to include not only debts incurred by the testatrix in her lifetime, but also all other valid obligations of the estate, including proper administration expenses, but subject to the provisions of paragraph designated second of the will.
As to the special guardian’s objections designated 1 through 4 inclusive, the executrices are hereby directed to submit proper proof as to the necessity and payment of the items objected to. Following receipt of evidence as to such items, this court will rule upon those objections.